[No. 23764. Department Two. August 19, 1932.]

MABEL C. WHITE, *as Administratrix, Respondent,* v. CLAUDE J. STANLEY, *Appellant.*[1]

*O. R. Hopewell,* for appellant.

*Hanna & Gemmill,* for respondent.

MAIN, J.—This action was brought to recover damages for wrongful death. The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff in the sum of $7,847. The defendant moved for judgment notwithstanding the verdict, and, in the alternative, for a new trial, both of which motions

[1] Reported in 13 P. (2d) 457.

were overruled, and judgment was entered upon the verdict, from which he appeals.

The facts essential to be stated are these: The accident out of which the litigation arose happened April 5, 1931, at about the hour of nine o'clock p. m., on the Sunset highway, approximately seven miles east of the town of Waterville, in Douglas county.

Claude J. Stanley and Charles C. White both resided in Waterville, and were friends of many years' standing. Prior to April 5th, which was Sunday, they had discussed the matter of going to Moses lake on that day on a fishing trip. They met Saturday afternoon, and Stanley, for reasons which are not here material, was not sure that he could go, and White had not been feeling well for a day or two. They met again the following morning. The impediment to Stanley's going no longer existed, and White was feeling able to make the trip. They discussed the matter somewhat, and finally concluded to determine whether they should go by the flipping of a coin. The result was that they concluded to make the trip.

Each of them provided some lunch. Stanley took his automobile, a Chevrolet coach, and, before starting, purchased some gas, for which he paid. They did not take White's automobile because it was an open car, and not as easy to drive as was the Chevrolet.

About nine o'clock, they left Waterville and proceeded to Moses lake, arriving there at about eleven. It was a cool day, with a strong wind blowing. They fished awhile, with indifferent success, ate their lunch, and later drove to a nearby town for a meal, for which White paid. Later, they went to a more secluded part of the lake, where the waters were quieter, and fished until about six o'clock in the evening. During this time Stanley had waded into the lake, in water up to his knees, for the purpose of disengaging his line, which

had become connected with some object. Before starting on the return trip, oil and gas were purchased for the automobile, Stanley paying for the oil and White for the gas.

When they started, all the windows in the car were closed. The reason for this was, as Stanley testified: "Well, I was wet and it was a cold night, and I didn't want to catch cold, and we had the car closed." Stanley drove the car, and White sat in the front seat beside him. They proceeded in the direction of Waterville until the accident happened.

Prior to the accident, for the space of about a half an hour, White had slid down in the seat somewhat, and no conversation had occurred between the two. Stanley testified, in effect, that White appeared to be asleep, though he would not testify positively to that fact.

As they were proceeding west on the highway, another car approached, going east, in which were Edgar Mitchell and his family, and Mitchell was driving. The night was clear, the road was straight, and the headlights of both cars were burning. Mitchell testified that he saw the headlights of the Chevrolet as it came over the hill a quarter of a mile away, and there was nothing to prevent Stanley and White from seeing the headlights of Mitchell's car. The road at this place was oiled to a width of about sixteen feet, and on either side was a dirt shoulder of four or five feet.

As the Chevrolet car approached, Mitchell observed that it was on its left-hand side of the road, and he turned the car that he was driving to the right onto the dirt shoulder so that the left wheels were at about the edge of the oiled portion. Mitchell remarked to his wife that he thought the car that was approaching was going to hit them. The Chevrolet car continued to approach from the east on its left-hand side of the

road, and the two cars came together head-on, which meant that the Chevrolet car was not only on the left-hand side of the oiled portion of the highway, but was over on the dirt shoulder on that side.

As to the manner of the happening of the accident, Stanley testified:

"This car I ran into, the Mitchell car, apparently came right up out of the earth. I didn't see it until I was right on to it. There was no chance to get away from it."

He also testified that he must have been dozing or asleep. As a result of the accident, White was killed. His widow, Mabel C. White, was appointed administratrix of his estate, and brought this action.

In submitting the case to the jury, the trial court took from them the question of White's contributory negligence, and decided, as a matter of law, that he was not guilty of such negligence. The court submitted to the jury the question of whether White and Stanley, upon the fishing trip, were engaged in a joint adventure. Speaking generally, there are two questions presented upon this appeal, one that of contributory negligence, and the other joint adventure, and these will be considered in the inverse order from which they are presented in the briefs.

As to the question of joint adventure, the appellant contends: (a) that there was no evidence to take this question to the jury; (b) that, if there was such evidence, then the court should have submitted also the alternative question of host and guest, applying the gross negligence rule to such a case; and (c) that the court erred in the instruction defining what would constitute a joint adventure.

Under the facts stated, it cannot be held, as a matter of law, that White and Stanley, in going upon the trip, were not engaged in a joint adventure. The

appellant says that there was no express agreement that the parties should share the expense of the trip; but such an agreement was not necessary, and it could be inferred from the facts. Many times, an express or implied agreement to share the expense is one of the elements constituting a joint adventure, but it is not always a necessary element.

In *Masterson v. Leonard,* 116 Wash. 551, 200 Pac. 320, it was held that two boys were engaged in a joint adventure while riding the same bicycle covering a newspaper route belonging to one of them, but in which he was sometimes assisted by the other. In *Hurley v. Spokane,* 126 Wash. 213, 217 Pac. 1004, it was held that a brother and sister, while using their father's automobile, with his permission, were engaged in a joint adventure. In *Lloyd v. Mowery,* 158 Wash. 341, 290 Pac. 710, it was held that parties on a hunting trip, each contributing to the expense, were on a joint adventure. From those cases, it necessarily follows that the trial court did not err in refusing to decide, as a matter of law, that the facts in the case now before us did not constitute a joint adventure.

Whether there should have been submitted the alternative proposition of host and guest depends upon whether there was any evidence from which the jury had a right to conclude that such a relation existed. Stanley testified, categorically, that he did not invite White to go on the trip with him as his guest. The facts, as supported by the testimony, would not justify the inference that the relation of host and guest existed, and there was no error in the court refusing to submit this question to the jury.

The instruction defining what would constitute a joint adventure, which is complained of, is based upon the case of *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932, and is in almost the exact

language used in that opinion, and there was no error in this regard.

With reference to contibutory negligence, the appellant contends: (a) that White was guilty of contributory negligence as a matter of law; and (b) that, if he was not thus negligent, the question should have been submitted to the jury, and not withdrawn from them. These two contentions will be considered together. From the facts stated, and as they appear in the record, the jury had a right to find not only that Stanley, the driver of the Chevrolet, was dozing or asleep, but that White was also asleep.

The question here presented is whether one going to sleep while riding in the front seat of an automobile with another, at night, with all the windows closed, after the two had been out fishing in a cold wind during the day, presents a question of law or a question of fact for the jury.

In a case such as this, where the relation of joint adventurer exists, the driver of the automobile was required to exercise ordinary care, and the one riding in the front seat with him was also required to exercise ordinary care. While the standard of duty is the same, the conduct required to fulfill that duty is different. While one riding in the front seat of an automobile with another cannot be expected to control its operation or interfere with its movements, he must exercise, as stated, ordinary care, and cannot trust himself entirely to the care of the driver, placing absolute reliance upon his caution. *Sanderson v. Hartford Eastern R. Co.*, 159 Wash. 472, 294 Pac. 241; *Clarke v. Connecticut Co.*, 83 Conn. 219, 76 Atl. 523; *Weidlich v. New York, N. H. & H. R. Co.*, 93 Conn. 438, 106 Atl. 323. Whether one exercises ordinary care, depends upon whether he acted as a reasonably prudent person would under like or similar circumstances.

In *Bushnell v. Bushnell*, 103 Conn. 583, 131 Atl. 432, it was held that the plaintiff, who was riding in an automobile driven by the defendant, and an accident happened while both were asleep, was not guilty of contributory negligence as a matter of law, but the question was one for the jury.

In *Oppenheim v. Barkin*, 262 Mass. 281, 159 N. E. 628, 61 A. L. R. 1228, the plaintiff was riding in an automobile with the defendant when the accident happened, and both were asleep. It was held, under the particular facts of that case, that the plaintiff was guilty of contributory negligence as a matter of law, and could not recover.

Under the facts in the case now before us, we think it should be held that the question of whether White was guilty of contributory negligence in going to sleep was a question of fact for the jury to determine, and not a question of law for the court. Had he been awake, he would undoubtedly have known that Stanley was driving on the left-hand side of the road, and that a car was approaching from another direction. Under such circumstances, it clearly would have been his duty to have aroused Stanley and warned him of the approaching danger.

As above indicated, White could not place absolute reliance upon Stanley's caution, go to sleep while riding in an automobile with all the windows closed, after having been out fishing in a cool wind the greater portion of the day, and then have the court say, as a matter of law, that he was not guilty of contributory negligence.

The judgment will be reversed, and the cause remanded with direction to the trial court to grant a new trial.

TOLMAN, C. J., HOLCOMB, MILLARD, and BEALS, JJ., concur.