[No. 26506. Department One. September 13, 1937.]

GUY DUVALL et al., *Appellants,* v. THE PIONEER SAND AND GRAVEL COMPANY et al., *Respondents.*[1]

[1]Reported in 71 P. (2d) 567.

418

*Padden & Moriarty* and *Frederick Clanton,* for appellants.

*Whittemore & Truscott, Arthur L. Haugan,* and *Smith & Matthews,* for respondents Pioneer Sand and Gravel Company *et al.*

*Caldwell, Lycette & Diamond,* for respondent Kenworth Motor Truck Corporation.

BLAKE, J.—The plaintiff Frances A. Duvall sustained injuries as the result of a collision between an automobile in which she was riding and a truck driven by defendant Wilbur Hough. She brought this action against Hough, The Pioneer Sand & Gravel Company, Al Mack, and Kenworth Motor Truck Corporation, alleging that Hough, at the time of the collision, was

operating the truck as the agent or employee of the other defendants.

The cause was tried to a jury. At the close of plaintiffs' case, Kenworth Motor Truck Corporation, on motion for nonsuit, was dismissed from the action. As to the other defendants, Hough, Mack and The Pioneer Sand & Gravel Company, the case was submitted to the jury, which returned a general verdict in favor of all the defendants. From judgment entered on the verdict, plaintiffs appeal.

The collision occurred at the intersection of Airport way and Spokane street, in the city of Seattle. Airport way extends north and south. Spokane street, extending east and west, becomes Columbian way to the east of the intersection. Both Spokane street and Columbian way are arterial highways, but there are stop signs at all four corners of the intersection.

The truck approached the intersection from the east. The car in which Mrs. Duvall was riding approached it from the north. The machines collided in the northwest quarter of the intersection. There was ample evidence to take the case to the jury with respect to negligence on the part of Hough, and negligence on the part of Mrs. Barker, the driver of the car in which Mrs. Duvall was riding.

The question of primary importance raised by the appeal is whether Mrs. Barker's negligence may be imputed to Mrs. Duvall. The court submitted the question to the jury under instructions defining joint adventure. Appellants contend that the jury should have been instructed, as a matter of law, that the relationship of Mrs. Barker and Mrs. Duvall was that of host and guest.

 This court has declined to attempt to lay down any hard and fast rule by which the relationship of host and guest may be distinguished from that of joint

adventurers, contenting itself to determine the status upon the facts of the particular case before it. *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932. In that case, the court enumerated the following elements as essential to the relationship of joint adventurers:

"There must be an agreement to enter into an undertaking in the objects or purposes of which the parties to the agreement have a community of interest and a common purpose in its performance. Necessarily, the agreement presupposes that each of the parties has an equal right to a voice in the manner of its performance, and an equal right of control over the agencies used in its performance."

Ordinarily an agreement to share expenses is an element in joint adventure, but it is not essential. *White v. Stanley,* 169 Wash. 342, 13 P. (2d) 457. Its absence will not be conclusive that the enterprise is not a joint adventure. *Masterson v. Leonard,* 116 Wash. 551, 200 Pac. 320; *Hurley v. Spokane,* 126 Wash. 213, 217 Pac. 1004. Nor is a finding of joint adventure precluded by declaration of interested parties that the relationship was that of host and guest. *Jensen v. Chicago, M. & St. P. R. Co.,* 133 Wash. 208, 233 Pac. 635.

In the light of these general rules, let us examine the facts upon which the court submitted to the jury the question of joint adventure. The car in which Mrs. Duvall was riding belonged to Mrs. Barker. There were, at the time of the collision, six ladies in the car. All were members of the Everett branch of the Order of Pocahontas, and were either members or substitute members of the degree team of that lodge. Five of them had left Everett in Mrs. Barker's car the morning of the accident, to attend a lodge conclave at Tacoma, where they were to put on degree work. By prearrangement, they picked up the sixth member of

the party, who was to act as a substitute member of the team. In order to put on the degree work at Tacoma, it was essential that the six ladies from the Everett lodge be present and participate. The team at Everett had been practicing the week before for the work to be put on at Tacoma. At the last practice, two or three days before the trip, Mrs. Barker had arranged to take the ladies to Tacoma in her car.

From these facts, we think all the elements of joint adventure, as enumerated in *Rosenstrom v. North Bend Stage Line, supra,* sufficiently appear to make the question one for the jury. There was the common object—to put on degree work at Tacoma, which could be achieved only with all present. There was the prior agreement to go and effectuate the objective. All members of the party who testified said they were the guests of Mrs. Barker and had not agreed to share the expense of the trip. But such testimony, as we have seen, does not preclude a finding that the enterprise was in fact a joint adventure.

Appellants suggest that evidence of the element of "equal right of control over the agencies used in . . . performance" of the common purpose is lacking. We think that element may be inferred from the very purpose of the trip and Mrs. Duvall's connection with it as a member of the degree team. The fact that Mrs. Barker owned the car and was driving it does not conclusively negate the element of "equal right of control." For the definition of that element, as stated in *Rosenstrom v. North Bend Stage Line, supra,* presupposes that "one or more of the parties may . . . intrust performance to another."

It is contended that the court erred in refusing to give certain requested instructions relating to joint adventure. The subject was adequately and clearly submitted to the jury in an instruction based upon the

rules laid down in *Rosenstrom v. North Bend Stage Line, supra.* This was sufficient.

Appellants contend that the court erred in submitting to the jury the question of contributory negligence on the part of Mrs. Duvall. It appears from the evidence that with Mrs. Barker in the front seat were Mrs. Duvall and Miss Hawkins, the latter sitting in the middle. They all testified that the car came to a stop beside the sign at the northwest corner of the intersection; that they looked to the left, and did not see the truck. Mrs. Barker put her car into low gear, and started through the intersection. Mrs. Duvall said that, as they were rolling into the intersection, she saw the truck about a "truck length or a truck length and a half" away; that she did not warn Mrs. Barker, because she thought the truck would stop; that the truck came on into the intersection; that the truck driver was looking to his left, and that she then exclaimed: "My God, if he doesn't turn his head he will hit us." Miss Hawkins testified that she did not see the truck before the collision. Mrs. Barker testified that the truck was two feet from them when she first saw it.

There was evidence from which the jury was warranted in believing that one standing beside the stop sign at the northwest corner of the intersection could see four hundred fifty feet up Columbian way. There was also evidence that Mrs. Barker did not stop before entering the intersection. In any event, it is clear that, when Mrs. Barker's car was beside the stop sign, the truck was within the ladies' range of vision. That they did not see it, might be due to the fact that they did not look, or, as may be likely, their range of vision was obscured by another car, which, they testified, drew up beside theirs on the left, and entered the intersection ahead of them. Under these circumstances, we do not think it was error for the court to submit

to the jury the question of Mrs. Duvall's contributory negligence. Appellants complain of the instructions on the issue, but we think they properly stated the law in the light of the evidence.

Numerous errors are assigned in the giving of instructions and in refusing requested instructions relating to the relative rights and duties of the drivers of the truck and car. We do not think there is merit in any of these assignments of error. The court clearly, concisely, yet comprehensively, instructed the jury on all the material issues under the evidence. In two instances, it might be said the court committed technical error, but in neither instance was the instruction misleading. We are of the opinion that no error prejudicial to appellants' case was committed either in the instructions given or in the refusal to give those requested.

■ A witness for the respondents testified that, at the scene, shortly after the collision, one of the ladies said that she did not see the truck until after the collision. Appellants assign this as error. The statement was as to a matter of fact, and was admissible as a part of the *res gestae*. *Britton v. Washington Water Power Co.*, 59 Wash. 440, 110 Pac. 20, 140 Am. St. 858, 33 L. R. A. (N. S.) 109; *Heg v. Mullen*, 115 Wash. 252, 197 Pac. 51.

■ The driver of the truck was permitted to testify that, if Mrs. Barker had stopped before entering the intersection, he would have had sufficient time to get across the street. Objection was made that this was a conclusion. In the colloquy arising over the admissibility of the statement, the court said: "I believe that no motor car driver ever crossed an intersection without making that decision. I will hold it is a fact." Appellants contend not only that the statement of the witness is a conclusion and inadmissible,

but also that the statement of the court above quoted is a comment on evidence. If so, neither, in our view, could possibly be prejudicial.

█ There are many other assignments of error, which go to the issue as to whether Hough was an employee of The Pioneer Sand & Gravel Company. It will be unnecessary to consider these, since the jury exonerated Hough. For the evidence discloses no negligence chargeable to the employer except that of Hough. Having exonerated Hough, the jury thereby exonerated his employer, for the employer's liability, under such circumstances, is wholly dependent upon the liability of the employee. *Doremus v. Root,* 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649; *Ogilvie v. Hong,* 175 Wash. 209, 27 P. (2d) 141. So it becomes immaterial whether Hough was in the employ of Mack or The Pioneer Sand & Gravel Company.

Judgment affirmed.

STEINERT, C. J., BEALS, and GERAGHTY, JJ., concur.

MILLARD, J. (dissenting)—Not having "an equal right of control over the agencies used in its performance," the relationship is not that of joint adventurers, hence the judgment should be reversed.