[No. 28392. Department Two. December 1, 1941.]

LORRAINE EDWARDS, as Guardian ad Litem for James Garfield Edwards, a Minor, et al., Appellants, v. H. WASHKUHN, et al., Respondents.[1]

[1]Reported in 119 P. (2d) 905.

426

*Wright & Wright (Arthur T. Wendells,* of counsel), for appellants.

*Ballinger, Hutson & Boldt,* for respondents.

JEFFERS, J.—This action was instituted in the superior court for King county, by the guardian *ad litem* for each of the following named minors, to wit, James Garfield Edwards, William H. Wada, George Murphy, Raymond Harold Bradbury, and William Robert Anderson, and by the parents of Dellray Bender and Ralph Edward Murphy, deceased minors, against H. Washkuhn and R. W. Precious to recover for injuries sustained, expenses incurred, loss of time, etc., as to the five boys first mentioned, and for loss of support and expenses incurred as to the two boys who were killed as a result of the collision hereinafter referred to.

The collision which is the basis of this action occurred at about seven p. m., on August 30, 1939, on the Sunset highway, just west of Sunset lodge, where the road borders Lake Keechelus, when a coupe owned and driven by Raymond Bradbury, proceeding west along this highway, collided with a truck and semi-trailer owned by H. Washkuhn and being driven east by R. W. Precious. At the time of the accident, the six other boys above named were riding with Bradbury. James Edwards was in the seat to the right of Brad-

bury, to the right of Edwards was William Anderson, and on Anderson's lap was Dellray Bender. In the rumble seat were George Murphy, Ralph Murphy, and William Wada, a Japanese boy.

The complaint sets up seven purported causes of action based on the claimed negligence of Precious, the driver of the truck. While there are six claimed acts of negligence, plaintiffs in their brief rely principally on the allegation that defendant Precious, just before and at the time of the accident, was driving his truck to the left of the yellow center dividing line of the highway, and in the lane of traffic used by westbound vehicles.

Defendants, by their answer, admit the ownership of the truck; that a collision occurred at the point hereinbefore referred to; that five of the boys in the coupe were injured and two of them killed; but deny that the driver of the truck was negligent. Defendants set up as affirmative defenses that the seven boys, at the time of the accident, had entered upon a joint venture, for the purpose of going from their homes in Seattle to Wenatchee, and that the accident was wholly caused by the negligence of the seven coadventurers, acting through the driver of the car, Raymond Bradbury, in that (a) the car was operated with more than three persons in the front, or operator's, seat; (b) that the car was operated by a person who at the time, by reason of fatigue and sleepiness, was not fully competent to operate and control same; (c) that the operator failed to keep a careful lookout ahead; (d) that the operator of the coupe negligently failed to follow the curvature of the road and to keep the coupe to the right of the center of the highway; (e) that the operator of the coupe negligently failed seasonably to observe defendants' truck, or, observing the same, to take precautions against colliding therewith; (f) that

the operator of the coupe negligently drove the same across the center line of the highway and into contact with the rear wheel of the truck.

It should be stated that during the trial a motion was made by counsel for the guardian *ad litem* of William Anderson to dismiss him from the case, and this motion was granted. William Anderson did not testify in the case.

A statement of the events leading up to this most unfortunate accident may be summarized as follows: The seven boys in the coupe at the time of the accident had been friends for some time, and had been in the habit of going around together. On the night of August 28th, they had been out together to a place called "Lanler's Acres," and either at this place or on the way home, Bradbury mentioned that he was on his vacation and was going over to Wenatchee to see his sister. Some of the boys stated they would like to go along, and it appears that there was some considerable discussion about the trip. It does not appear who participated in this conversation, or just what was said, but, at any rate, the boys congregated the next day (August 29th) at the home of the Murphy boys, about noon or shortly thereafter. All of the boys brought a little money, Wada having about seven dollars. Most of the boys brought blankets, some of them brought canned goods, and others provisions. A rack or box was put on the running board of the car, and the provisions and blankets loaded, and after filling the car with gas and oil, the boys left for Wenatchee about four p. m. On the way they stopped at Fay's cafe in Easton, and arrived in the vicinity of Wenatchee about twelve o'clock the night of the 29th.

They camped that night under a bridge about two miles out of Wenatchee, and according to the testimony of the boys, arose about nine o'clock the next

morning, and after cooking their breakfast they proceeded to the home of Bradbury's sister in Wenatchee, where they stayed about an hour or an hour and a half. They then proceeded to drive around Wenatchee and through some of the orchard sections near there. One of the boys made some inquiry about work, but with that exception the boys were together all the time.

About four or four-thirty o'clock in the afternoon of August 30th, they started on the return trip. Ralph Murphy and Edwards drove from Wenatchee to the summit of Blewett Pass, where Bradbury took the wheel. On the return trip, as appears from the testimony of both Bradbury and Wada, they again stopped at Fay's cafe, at Easton, where Bradbury and the other boys talked to the lady who ran the cafe. It also appears that after leaving Easton they stopped and ate some canned goods.

It appears that some of the boys assisted in purchasing the gas and oil before they started for Wenatchee, and, according to the testimony of Bradbury, contributions to the expenses of the trip were made by the boys other than himself. It also appears that the boys all ate from the stock of provisions provided. None of these boys, with the exception of Bradbury and Wada, who was in the rumble seat, was able to or did testify to seeing the truck, or to anything concerning the accident or how it happened, and all that Wada testified to was that he saw the truck as it went by the coupe and that just a split second before the collision he thought he heard Edwards say, "Look it is upon our side of the road." Edwards testified he did not see the truck, and did not know what he was doing at the time of the accident; that the last he remembered was the stop they made before the accident. Of the seven boys, then, the only one who purported to have seen the truck before the collision was Bradbury.

Bradbury testified that he first saw the truck as he was entering a curve, and that it was about one hundred fifty feet away; that at this time he (Bradbury) was driving very close to the edge of the pavement on his side of the road, and at about thirty or thirty-five miles per hour; that when he first saw the truck it was over on his side of the road; that it looked to him as though the truck was cutting the curve; that the driver of the truck tried to get it back on its side of the road, and did get the cab back, but that the back end was long, and that part struck the coupe. Bradbury further testified that when he saw the truck he put on his brakes, and at the time of the collision could not have been going faster than fifteen or twenty miles per hour. In his pre-trial deposition, Bradbury stated:

"Q. You had passed the whole of the front part of the truck and had gotten by the end of the truck with the front end of your car before you collided with the middle and toward the rear of the left side of your car? A. Yes, sir."

Bradbury thought the left front wheel was knocked off by the impact, and that thereafter he traveled about twenty-five or thirty feet. Mr. Vertrees, a garageman who took the car out of the lake, testified that all the wheels were on the car, but he thought one tire and rim were gone. From plaintiffs' exhibits 7 and 8, photographs, it is apparent that, as the car went over the bank and into the lake, it rolled over large jagged rocks. It appears without dispute, from the testimony of R. F. Garver, the highway patrolman who appeared on the scene shortly after the collision, that the only mark on the truck or trailer was a slight dent in the rim of the left wheel of the trailer.

Bradbury further testified that after the collision he lost control of the car, and that it turned across the highway and over the bank into the lake; that he was

knocked unconscious, and did not remember anything until about fifty-three hours later, when he came to in the hospital.

It appears from the testimony of James M. Boose, deputy coroner of Kittitas county, and of Mr. Garver, the highway patrolman, that, from the appearance of the highway, the collision took place to the south of the center line of the highway, which would be in the lane of traffic for eastbound vehicles, and that the car traveled from the point of impact about one hundred fifty feet, across the road and shoulder, to the edge of the bank over which it went into the lake. It also appears that to the east of the point of collision is a straightaway, and the testimony of both Boose and Garver was to the effect that from marks found on the pavement, the coupe proceeded in a straight line from where it would be traveling along the straightaway, across the road and shoulder and over the bank; in other words, that those marks indicated that the coupe did not turn with the curve in the road, but proceeded in a straight line.

It might also be stated at this point that Mr. Garver testified that Bradbury told him in the hospital that he knew nothing about how the accident happened, and that he must have been asleep. Mr. Boose also testified that he talked with Bradbury almost every day he was in the hospital, in an endeavor to get a statement from him about the accident, and that Bradbury on all these visits could give him no information about the accident, until about September 22nd, which was the day after Mr. Gershon, of counsel for the plaintiffs, had been to the hospital and talked with the boys.

Mr. Precious testified that he had driven a truck for five or six years; that on the night in question the truck was loaded with lumber and shingles; that the accident occurred at seven-ten p. m.; that it was rainy and he had his swipe working; that the accident happened on

a curve; that he was entering the curve when he saw the coupe, and it was traveling on its right side of the road. Mr. Precious testified further that he did not notice anything unusual about the way the coupe was being operated, until just as it passed his cab, at which time it was so close that he thought the coupe was partly on his side of the road, and he became alarmed; that he felt a slight click and he was sure the coupe had hit his trailer; that he was on his side of the road at all times; that, after he felt this click, he pulled off to one side of the road, stopped his truck, and went back to where the car had gone over the bank; that one of the boys asked him to go for help, which he did, and for that reason did not assist in getting the boys out of the water.

The case was tried to the court and jury, and the jury brought in verdicts in favor of the defendants and against each plaintiff. A motion for new trial was timely made and denied, and this appeal by plaintiffs, from the judgment entered on the verdicts, followed.

The following assignments of error are made: (1) Error in admission of opinion testimony given by respondent Precious; (2) error in admission of incompetent and irrelevant testimony of Mrs. Fay; (3) error in the giving of instructions Nos. 5, 8, 12, and 13; (4) misconduct of counsel; (5) error in refusing to grant appellants' motion for new trial.

It may be stated at the outset that the respective parties to this lawsuit contend the proximate cause of the collision was the fact that the driver of the other vehicle was on the wrong side of the center line of the highway.

The first assignment of error is based upon the admission in evidence of a certain statement made by Mr. Precious in a pre-trial deposition. This matter came up on the cross-examination by Mr. Boldt. Mr. Precious had been called by appellants as an adverse

witness, and had been interrogated by Mr. Stevenson relative to statements made in his deposition. The objection is to the following question by Mr. Boldt and answer by Mr. Precious:

"Q. I will ask you if in addition to the material that Mr. Stevenson asked you about in the deposition did you not also answer as follows: 'A. Well, the car, that car in front of me, just kept on coming straight instead of going around the curve, it seemed and instead of following the curve, why it just kept on coming straight and it ticked the corner of the trailer wheel, in the rear, and it went on behind it and on over the bank into the lake.' and also on the same—

"MR. STEVENSON: I will ask Your Honor to permit me to read the next question and answer: 'Did you see all that? A. No.'"

It may be admitted that, after the car passed the cab of the truck, Mr. Precious did not at that time see what actually happened. However, it will be remembered that Precious testified that at the time the coupe passed him it was so close that he thought it was over on his side of the yellow line, and that he heard the coupe come in contact with the trailer. It further appears that he stopped his truck and went back along the highway, and saw where the car had gone over the bank. The only part of this answer which might be termed a conclusion or opinion is that part which states:

"Instead of following the curve, why it just kept on coming straight and it ticked the corner of the trailer wheel in the rear, and it went on behind it and on over the bank into the lake."

In view of the fact that Precious immediately went back to the scene of the collision, and saw where the car went over the bank into the lake, we doubt if even that part of the answer last above set out can be called a conclusion.

Appellants admit that, if there had been other testimony to support respondents' theory of the case, the claimed error might not have been prejudicial. Both Mr. Boose and Mr. Garver testified that the coupe did not vary from a straight line from the point of impact, which they determined from the marks on the pavement to have been about one and one-half feet over in the eastbound lane, but went across the road over the shoulder and into the lake. Even admitting that part of Precious' answer was only a conclusion, we are unable, in view of the testimony of Boose and Garver, and the physical facts, to see how any prejudice could have resulted in allowing the testimony to be read to the jury.

We have examined the authorities cited by appellants to sustain their contention that it was error to admit the above testimony. We refer to the case of *Cleasby v. Taylcr*, 176 Wash. 251, 28 P. (2d) 795, as typical. In the cited case, several days after the accident, two persons were shown skid marks made on the road by the wheels of the defendant's car. These witnesses were then asked to give an opinion concerning the speed of the automobile. Neither had seen the car in motion. We stated that the conclusion or opinion of each of the witnesses was a mere speculation or guess. The cited cases are not applicable herein.

Assignment of error No. 2 deals with the testimony of Mrs. Fay, operator of the cafe at Easton. Mrs. Fay, over objection, testified that, on the night of the accident, seven boys, one of whom was a Japanese boy, stopped at her restaurant. She could not identify the boys at the time of trial, but she testified that this was the only group of seven boys who had stopped at her place on either the 29th or 30th of August. She described their appearance as tired and sleepy. She was not permitted to testify to any conversation had

with the boys, but only as to their appearance. The chief objection to this testimony was that there was not a sufficient identification of the boys to make the testimony competent, and that, in any event, it was not relevant.

It should be remembered that Bradbury testified that the boys stopped at this cafe on their way to Wenatchee, and also on the return trip, at which time they talked to the lady in charge of the cafe. As to the relevancy of the testimony, it should also be kept in mind that none of the boys, other than Bradbury, could tell anything about the accident, and that none of them, other than Bradbury and Wada, ever claimed he saw the truck. Wada only saw it as it passed the car. It will also be remembered that Bradbury, while in the hospital, admitted to Garver that he did not know how the accident happened, and that he must have been asleep.

In view of these facts, we are of the opinion it was for the jury to say whether or not the boys who stopped at the cafe were the boys involved in the accident. In other words, there was a sufficient identification of the boys to make the testimony admissible. While the fact that the boys looked tired and sleepy would not of itself be sufficient to establish negligence, we think it was a matter to be considered by the jury in connection with the other facts, and that the testimony was relevant.

■ Error is also assigned upon the giving of instructions Nos. 5, 8, 12, and 13.

Instruction No. 8 defines contributory negligence, and we think correctly so. In fact, appellants point out no error in this instruction, but contend that the whole of the court's instructions are saturated with the theory of contributory negligence.

Appellants, in their brief, then quote instruction No. 5, as given by the court. This instruction points

out that each of the plaintiffs charged the defendant driver with certain acts of negligence, but that it was not necessary for plaintiffs to prove that the driver was guilty of each and every act of negligence before they could recover, and that it would be sufficient if plaintiffs established by a fair preponderance of the testimony one or more of such acts of negligence,

" . . . unless you find that such plaintiff himself was guilty of contributory negligence, or unless you find that such plaintiff is chargeable with the contributory negligence, if any, on the part of the driver of the automobile in which such plaintiff was riding."

We think this instruction correctly states the law.

Appellants then state that, in addition to the above instructions, the jury were allowed to consider contributory negligence by virtue of instructions Nos. 6, 11, 12, 13, 14, 14½, 16, 18, 22, and 22½. Instructions Nos. 6, 11, 16, 18, 22, and 22½ are not set out in appellants' brief, and no error is predicated upon the giving of those instructions. Instruction No. 12, of which appellants complain, reads:

"If you find from a preponderance of the evidence that the collision here in question proximately resulted solely from negligence on the part of the defendant driver, then your verdict should be in favor of each plaintiff herein.

"If you find from a preponderance of the evidence that said collision proximately resulted solely from negligence on the part of the driver of the automobile in which the plaintiffs were riding, then your verdict should be in favor of the defendants and against each plaintiff herein.

"If you find from a preponderance of the evidence that said collision proximately resulted from concurring negligence on the part of both of the drivers here in question, then I instruct you that your verdict should be against the plaintiff driver and your verdict as to the other plaintiffs will depend upon your finding as to (1) contributory negligence, if any, on the

438

part of such other plaintiffs, and (2) whether or not such negligence, if any, on the part of the plaintiff driver is imputable to such other plaintiffs. If you find from a preponderance of the evidence that a plaintiff was himself guilty of contributory negligence, such plaintiff can recover in no event. If you find from a preponderance of the evidence that the relationship existing betwen the several plaintiffs herein was that of joint venture, then I instruct you that the negligence, if any, on the part of the plaintiff driver is imputable to each of the other plaintiffs and neither of such plaintiffs would be entitled to recover if such plaintiff driver was guilty of contributory negligence. On the other hand, if you find from a preponderance of the evidence that the relationship existing at the time here in question, between the plaintiff driver and the other plaintiffs, was that of host and guests, then I instruct you that the negligence, if any, on the part of the said plaintiff driver cannot be imputed to the other plaintiffs and such plaintiffs, unless themselves guilty of contributory negligence, would be entitled to recover herein, if said collision proximately resulted from concurring negligence on the part of both drivers."

It is argued by appellants that instruction No. 12 permitted the jury to find any or all of three different types of contributory negligence. Appellants further contend that there was insufficient evidence to warrant the submission to the jury of the question of contributory negligence of Bradbury, and also insufficient evidence to warrant the submission to the jury of the contributory negligence of any of the other boys who were riding with Bradbury.

We are of the opinion that the instruction properly stated the law, as applied to the facts in this case, and that there was sufficient evidence to make both the contributory negligence of Bradbury and those riding with him questions for the jury. As to Bradbury, there can be no question but that there was competent testimony, if believed by the jury, sufficient to estab-

lish that he was guilty of negligence which contributed to the collision. We only call attention to his admission to Garver that he must have been asleep, and to the physical facts as to where the accident occurred and the course taken by the Bradbury car. The jury had a right to believe that the boys were tired and sleepy when they left Easton, and also that Bradbury was asleep at the time of the collision. The jury would also have been warranted in believing that the boys, having been with Bradbury all the time, were bound to know his condition. In view of the fact that the boys, knowing Bradbury's condition, continued to ride with him, whether or not they were guilty of contributory negligence became a question for the jury.

The jury might also have believed that had any of the boys been paying attention to Bradbury's driving, or to the road, they also would have seen the truck in time to have warned Bradbury of the danger, he having testified that he saw the truck when it was one hundred fifty feet away, at which time it was on his side of the road.

It might also be stated that, while these boys were all minors, they were full grown men, and four of them were in the front seat, in violation of Rem. Rev. Stat., Vol. 7A, § 6360-116 [P. C. § 2696-874]. They were all familiar with, and had participated in, this arrangement from the time they left home until the accident. While the boys denied that this seating arrangement in any way interfered with the driver, the jury were not bound to believe this testimony, but could have found that the physical condition of the boys and the overcrowding of the car did contribute to the accident.

We are also of the opinion that the jury would have been warranted in believing that the boys were, in fact, asleep up to the time of the accident. In fact, it is difficult to reach any other conclusion, in view of the

admitted fact that none of the boys, other than Bradbury and Wada, saw the truck, and Wada saw it only as it passed them a split second before the accident.

■ While we have held that one riding in an automobile, not the driver, and who is asleep at the time of a collision with another car, is not guilty of contributory negligence as a matter of law, we have also held that under certain circumstances the question of the contributory negligence of such person becomes a question of fact for the jury. *White v. Stanley*, 169 Wash. 342, 13 P. (2d) 457; *Cody v. Bennett*, 177 Wash. 199, 31 P. (2d) 83.

Appellants cite *Burge v. Anderson*, 164 Wash. 509, 3 P. (2d) 131, and other cases, to sustain their contention that there was insufficient evidence to warrant the submission to the jury of the question of contributory negligence of Bradbury. A reading of these cases, in our opinion, will show that they are not controlling herein.

Appellants then cite, among others, the following cases, which they contend support their argument that there was insufficient evidence to warrant an instruction relative to contributory negligence of appellants other than Bradbury: *Wolden v. Gardner*, 159 Wash. 665, 294 Pac. 574; *Zelinsky v. Howe*, 163 Wash. 277, 1 P. (2d) 294; *White v. Stanley*, 169 Wash. 342, 13 P. (2d) 457; *Alexiou v. Nockas*, 171 Wash. 369, 17 P. (2d) 911; *Cody v. Bennett*, 177 Wash. 199, 31 P. (2d) 83. These cases hold that, under the facts in the particular case, the court was not justified in holding as a matter of law that the person riding in the automobile, but not driving, was or was not guilty of contributory negligence, but that the question was one of fact for the jury.

■ Instruction No. 13 is a definition of joint venture, and an application of that definition to the facts in

this case. Again it is not contended that this instruction does not properly state the law, but it is contended that the facts do not warrant the submission of this question to the jury. Appellants state in their brief:

"Try as one will, he cannot find in the record in this case any 'agreement between the driver and the passengers to enter into an undertaking in the object or purposes of which the driver and passengers have a community of interest and a common purpose in the performance of the agreement,' as required by the instruction."

Appellants rely principally upon the case of *Carboneau v. Peterson*, 1 Wn. (2d) 347, 95 P. (2d) 1043, to sustain this contention.

It may be admitted that there was no express agreement between Bradbury and the other boys relative to this trip. However, we have consistently held that it is not necessary to have an express agreement, to establish the relation of joint adventurers, but that such relation may be inferred from the facts, and that the contract may be express or implied. *White v. Stanley* and *Carboneau v. Peterson, supra.*

In this connection, we desire to call attention to the case of *Manos v. James*, 7 Wn. (2d) 695, 110 P. (2d) 887, not cited by either counsel herein. That case was decided since the *Carboneau* case, and we therein stated:

"The common purpose which the parties had in their undertaking was to transport themselves from one place to another. In this purpose, and it might be said identified with it, they had a community of interest, because it was to their mutual advantage to be carried to their common destination; also, it would seem, they had, as a further common interest, their mutual purpose of making the journey expeditiously and with a material saving of expense to each of them. It is true that appellant and respondent had not intended to do the same things after their arrival in Seattle, but, under the circumstances, that is not a controlling factor. The

undertaking of the parties, under the terms of their contract, was to travel to Seattle together in appellant's automobile."

In the instant case, the admitted common purpose was the transportation of all these boys to Wenatchee and return. There was, to some extent, actual joint control, instead of the mythical control which usually enters into this relationship. Bradbury admitted that there were contributions, and they all admitted that they all shared in the provisions furnished before they started, and in those subsequently purchased. It is true the boys all denied any express agreement entered into before they started on this venture, but in the face of the facts, the jury were not required to accept as true their statements. The jury could reasonably have inferred from the facts that there was an implied agreement that the boys would all share in the expenses of the trip, which was not a mere jaunt of a few hours, but was to be a two-day trip. We stated in *Potter v. Jaurez,* 189 Wash. 476, 66 P. (2d) 290:

"What inferences might the jury reasonably draw from this state of facts? In answering this question, it must be borne in mind that substantially all of the testimony came from the lips of interested witnesses, and the jury was entitled to reject anything which appeared so contrary to common experience as to belie its truth."

In the instant case, the trial court, in considering this question, stated:

"It would likewise seem (1) that a joint venture could be established by circumstantial, as well as direct evidence, and (2) that the jury is not bound to accept the testimony of interested parties. Unless such principles are applicable to automobile cases it is difficult to see how a joint venture could ever be proven except by the express admissions of the parties thereto."

We see no object in again discussing the many cases in this state involving the question of joint venture.

The writer of this opinion, in *Lampe v. Tyrell,* 200 Wash. 589, 94 P. (2d) 193, discussed at some length our former cases, and Judge Steinert again reviewed many of our cases on this subject in *Carboneau v. Peterson, supra,* but the fact still remains that each one of these cases must be decided on the facts of the particular case. We are of the opinion that the court did not err in submitting to the jury the question of joint venture, under the rule announced in *Lloyd v. Mowery,* 158 Wash. 341, 290 Pac. 710; *White v. Stanley, supra; Meacham v. Gjarde,* 194 Wash. 526, 78 P. (2d) 605; *Manos v. James, supra;* and other cases to which we need not refer. We may say that we think the facts in the instant case are easily distinguishable from the facts in the *Lampe* case, *supra.*

■ While we have discussed at some length the questions of contributory negligence and joint venture, we are of the opinion that, in view of instruction No. 14½, as given, and the verdicts of the jury, no prejudice could have resulted to appellants by the giving of instructions on the two issues last referred to. Instruction No. 14½ reads as follows:

"You are instructed that the ultimate fact to be determined by you, and upon which the question of liability in this case solely depends, is as to which of the vehicles involved was upon its left-hand side of the center of the highway in question at the time of and immediately preceding the collision in question. In the complaint of the plaintiffs there are various allegations of alleged negligence on the part of the defendant driver, and in the affirmative defense of the defendants there are various allegations of negligence on the part of the plaintiffs. As to all of these, excepting the one ultimate fact of which vehicle was on its left-hand side of the center of the highway, they are only to be considered by you insofar as they bear upon the one ultimate issue of fact just stated. In other words, all of the other alleged issues and allegations of negligence are only to be considered by you insofar as they

may tend to explain or prove which of the vehicles in question was on its left-hand side of the highway at the time of the collision complained of.

"Insofar as this case is concerned, and under the law, neither of the drivers involved can properly be charged with negligently causing the collision unless such driver is found by you to have driven his vehicle to his left of the center line of the highway. If you find that one or the other of the vehicles in question, at all times immediately prior to and up to the time of the collision in question, remained upon its right-hand side of the center line of the highway, you are instructed that you cannot rightfully or properly find the driver of that vehicle liable for the causing of the collision in question, even though such driver may have been operating his vehicle at an unlawful rate of speed or may have otherwise been negligent in one or more of the allegations of negligence as stated in the pleadings of the parties."

. As we have stated, the main argument of counsel for the respective parties was directed to the question of which one of these drivers was on the wrong side of the center yellow line of the highway, recognizing, we think, that the proximate cause of the collision was that one driver or the other was on the wrong side of the road. The trial court undoubtedly recognized that this was true, and gave instruction No. 14½, to which no exception was taken.

Under this instruction, as we view it, if the jury found that Precious, at all times immediately prior to and at the time of the collision, was on his own side of the road, that is, to the right of the center line of the highway, then he would be in no way responsible for the collision, and none of the appellants could recover. On the other hand, if they found that Precious, immediately prior to and at the time of the collision, was driving to the left of the center line of the highway, then and in that case he would be guilty of negligence which would be the sole and proximate cause of the

collision, and all the appellants would be entitled to recover.

We are of the opinion that the effect of the general verdicts in favor of respondents and against each of the six appellants, amounted to a special finding that Precious, at all times immediately prior to and at the time of the collision, was on his own side of the road, and that Bradbury was to the left of the center line of the highway. This fact having been established, we know of no theory upon which either Bradbury or the other occupants of the Bradbury car could recover, and hence it would seem to follow that it would make no difference what the legal status of the occupants of the Bradbury car was, nor would it seem that the question of contributory negligence became material. We recognize that all of the instructions are to be considered, but as we view this situation, by instruction No. 14½, the jury were told that they must find a certain ultimate fact before any of the other issues would really be material.

We have held, in *Wilson v. Washington Concrete Pipe Co.*, 178 Wash. 545, 35 P. (2d) 71, and other cases, that, in collision cases of this character, the accident is the result of one or the other driver getting on the wrong side of the road.

The seventh assignment of error is based on the claimed misconduct of counsel for respondents, in that it is contended counsel tried repeatedly to get prejudicial matter before the jury. This prejudicial matter consisted of a purported conversation between Mrs. Fay and the boys in her cafe the night of the accident. An examination of the record convinces us that there was no misconduct of counsel in this case. If it can be said there was a repeated attempt to get certain testimony before the jury, it was due to the fact that counsel misunderstood the ruling of the court,

and we think the trial court so understood the situation.

We have considered all the instructions, and we are satisfied that the law applicable to the case was clearly and concisely stated; that the verdicts are amply supported by the evidence; that the trial court committed no prejudicial error; and that in all respects appellants had a fair trial. It follows that the trial court properly denied appellants' motion for a new trial.

The judgment is affirmed.

ROBINSON, C. J., BEALS, BLAKE, and SIMPSON, JJ., concur.

