**EAGLE STAR INS. CO. et al. v. BEAN et al.**
No. 10172.

Circuit Court of Appeals, Ninth Circuit.

March 30, 1943.

Rehearing Denied May 24, 1943.

See, also, 34 F.Supp. 300.

Patterson & Patterson and Clarke & Clarke, all of Seattle, Wash., for appellants.

Henderson, Carnahan & Thompson, of Tacoma, Wash., for appellees.

Before MATHEWS, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

This appeal was taken from a judgment dismissing an action against Earl Bean, Tillie Bean, his wife, Sy Nash, and Mildred R. Nash, his wife, a partnership doing business as the Olympia Supply Company.

Prior to April 10, 1939, Earl Bean began negotiations with the owner of a sawmill to purchase it for the purpose of dismantling the same. Olympia Supply Company, hereafter called the company, was engaged in the junk business. Earl Bean was experienced in the dismantling and sale of such properties. Nash was in charge of the company's office, and had no experience in dismantling properties. The respective wives took no part in the management of the company's affairs. The owner of the sawmill offered to sell the same for $22,000. Earl Bean then consulted one O'Leary, who furnished the money for the purchase in accordance with an agreement, subsequently, on April 10, 1939, reduced to writing. The owner of the sawmill made a bill of sale naming O'Leary as vendee.

Policies of fire insurance, aggregating a total of $30,000, were issued by appellants to O'Leary, immediately after execution of the bill of sale. Each policy contained the following provision: "If this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on payment of the loss, be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment."

The contract between O'Leary, first party, and the company, second party, provided in part as follows:

"It is understood that the net profits from this business is to be equally divided between the parties hereto. Said net profits are to be computed as follows: after the purchase price, namely $22,000.00 has been repaid to the *part* of the first part, then there is to be deducted from the gross profits the expenses incurred in dismantling said mill and any sales expense that may be incurred. It is understood that the parties of the second part are to superintend the dismantling of said mill and the sale of the property, and that said parties of the second part are to receive no compensation for their services or their personal expenses. It is further understood that the parties of the second part are to devote such portion of their time to the conduct of this business as is necessary, it being the intention of the parties that the purchase price shall be entirely repaid to the party of the first part as soon as possible, but in any event within a period of one year *months* from this date."

"It is further understood and agreed between the parties hereto that all monies obtained by the sale of any of the property shall be paid to the party of the first part and shall be deposited by him in a special account in his name as trustee with the Capital Branch, The National Bank of Commerce of Seattle, at Olympia, Washington. All disbursements, likewise, are to be made by the party of the first part by

check on said account. The books of this business shall be kept at the office of the parties of the second part.

"The parties of the second part guarantee that the net amount received by the party of the first part from this business shall not be less than $22,000.00."

Earl Bean employed his son, Abe Bean, then 21 years old, and another, to dismantle the property. Other employees were also engaged. On July 3, 1939, a part of the property was destroyed by fire which resulted from the negligent use by Abe Bean of an acetylene torch required to be used in dismantling the property. Appellants paid O'Leary $29,932 for the loss, and O'Leary executed articles of subrogation to appellants by which he assigned to appellants any cause of action he might have against the company.

Appellants then brought this action against the partners and Abe Bean to recover the amount paid to O'Leary. Appellants sought to introduce into evidence an examination of O'Leary, made pursuant to the terms of the insurance policies, but it was denied. In that examination, made before payment of the insurance, O'Leary stated that the partners had no interest in the property; that he was the sole owner thereof; and that the partners' sole interest was in being entitled to one-half the profits after sale. At the close of appellant's case, the court below sustained a motion of the partners to dismiss the action as to them, on the ground that the relationship between O'Leary and the partners was a joint adventure; that since Abe Bean's negligence would be imputed to the partners, it would also be imputed to O'Leary which would prevent action by O'Leary against the partners; and since appellants merely stepped into the shoes of O'Leary, they were prevented from recovering against the partners.

The court below found that Abe Bean was negligent; that his action, constituting the negligence, "was taken without the previous consent, authority or knowledge of the other defendants, or any of them, but was solely upon the initiative of Abe Bean". Judgment was rendered against Abe Bean, and the action dismissed as against the partners. This appeal followed.

Appellants contend that the relationship between O'Leary and the company was not that of a joint enterprise; that since the company, only, had control of the actions of Abe Bean, he, O'Leary, could not be considered an employer, and, therefore, negligence could not be imputed to him. Appellants further contend, that even if the relationship was that of a joint enterprise, then the doctrine of imputed negligence does not apply in an action between the members of the joint enterprise.

We think there is no basis in the Washington law, admittedly controlling here, for holding that O'Leary was negligent under the doctrine of imputed negligence applied in some actions involving joint adventurers.

 The elements of a joint enterprise, under the law of Washington, are stated in Carboneau v. Peterson, 1 Wash.2d 347, 374, 95 P.2d 1043, 1054, after a review of many of the Washington cases as "(1) a contract, (2) a common purpose, (3) a community of interest, (4) equal right to a voice, accompanied by an equal right of control". In view of the careful consideration given by the Supreme Court of Washington to their prior cases, we believe it is no longer the law of Washington that there is no joint adventure unless the parties agree, expressly or impliedly, to share the losses, as was indicated in State ex rel. Ratliffe v. Superior Court, 108 Wash. 443, 451, 184 P. 348, and Gottlieb Bros. v. Culbertson's, 152 Wash. 205, 277 P. 447. See, also, 47 C.J. 671, § 64; Keiswetter v. Rubenstein, 235 Mich. 36, 209 N.W. 154, 48 A.L.R. 1055; Bond v. O'Donnell, 205 Iowa 902, 218 N.W. 898, 63 A.L.R. 909; Hathaway v. Porter Royalty Pool, 296 Mich. 90, 733, 295 N.W. 571, 299 N.W. 451, 138 A.L.R. 968. Compare: White v. Stanley, 169 Wash. 342, 346, 13 P.2d 457; Duvall v. Pioneer Sand & Gravel Co., 191 Wash. 417, 420, 71 P.2d 567. It is, therefore, immaterial that the company guaranteed that O'Leary would receive not less than the purchase price.

 The principal contention is that there was no joint adventure because O'Leary did not have an equal right to a voice or an equal right of control, mentioned as the fourth element in Carboneau v. Peterson, supra.[1] Prior to that case, it

---

[1] Subsequent cases indicate no departure from the rule: Moen v. Zurich Gen. Accident, etc., Ins. Co., 3 Wash.2d 347, 101 P.2d 323; Manos v. James, 7 Wash. 2d 695, 110 P.2d 887; Paulson v. McMillan, 8 Wash.2d 295, 111 P.2d 983; Edwards v. Washkuhn, 11 Wash.2d 425, 119 P.2d 905; Pence v. Berry, 13 Wash.2d 564, 125 P.2d 645.

had been mentioned in earlier Washington cases that the joint adventurers must have equal voice and control in the operations of the enterprise, but that one of the adventurers could entrust actual control to another.[2] In Carboneau v. Peterson, supra, 1 Wash.2d at page 376, 95 P.2d at page 1055, the element in question was discussed as follows:

" * * * By this is meant that each of the parties has an equal right in the management and conduct of the undertaking, and that each may equally govern upon the subject of how, when, and where the agreement shall be performed. If the will or pleasure of one party is to control the others in these respects, there is no joint adventure.

"As a corollary to the preceding requirement, it follows that each party must have an equal right of control over the agencies used. This, of course, does not mean that each has the right to interfere at will with the driver to whom the duty of operating an automobile has previously been intrusted. It does mean, however, that each has an equal right of general supervision over the instrumentality, equal authority in directing how the instrumentality is to be used in the performance of the enterprise, and, likewise, equal responsibility for the manner of such performance".

■ In the instant case, the contract between O'Leary and the company did not indicate that O'Leary had no right of control or no voice in the operations of the enterprise. It did provide that actual control of the dismantling operations would be in the company. We think this is merely the case where one of the parties entrusted actual control to another, and that fact does not negative the holding that there was a joint adventure.

■■ However, it does not follow that the negligence of Abe Bean should be imputed to O'Leary, merely because O'Leary and the company were engaged in a joint enterprise. Appellants rightly contend, we think, that where one member of a joint enterprise sues another, the doctrine of imputed negligence does not apply. O'Brien v. Woldson, 149 Wash. 192, 195, 270 P. 304, 62 A.L.R. 436. However, appellants erroneously apply the rule, we think. They impute the negligence of Abe Bean to the company and then apply the rule as between O'Leary and the company. This, we think is erroneous. Since appellants are in the same position as O'Leary, and since neither O'Leary nor the company was guilty of positive negligence, it would be a strange situation to impute negligence to only one of two equally faultless parties in the same position. We think the rule of the cited case must be applied in its entirety, and that Abe Bean's negligence is imputed to neither O'Leary nor the company.

It follows, therefore, that appellants are not entitled to recover unless they can show positive negligence on the part of the company. Thus if the company had been negligent, it seems clear that appellants could recover for that negligence. O'Brien v. Woldson, supra; 47 C.J. 792, 793, § 234.

Appellants contend that the evidence shows negligence on the part of the company. Since a motion to dismiss was sustained at the conclusion of appellants' case in chief, the question is: was there any substantial evidence that the company was negligent? Appellants point to the following evidence (taken in the light most favorable to appellants): the mill was a wooden mill, ten years or more of age, with the fire-fighting apparatus removed, and the season was midsummer; and the dismantling operations were conducted with an acetylene torch by a young man, slightly more than twenty-one years old, without actual supervision of someone else. It is contended that under these circumstances the use of the torch was a dangerous instrumentality and the duty of the company to take proper precautions against fire was a non-delegable duty.

■ The difficulty with this contention is that it fails to take cognizance of other necessary facts. There was no evidence that it was not ordinary care to use the torch in the dismantling operations. In fact, appellants' expert seemed to assume that it was necessary. He certainly did not indicate that it was not an ordinary or customary occurrence. There was no evidence to the effect that Abe Bean had been given any instructions in this respect. Since appellants failed to show that Abe

[2] Rosenstrom v. North Bend Stage Line, 154 Wash. 57, 280 P. 932; Alexiou v. Nockas, 171 Wash. 369, 373, 17 P.2d 911; Bates v. Tirk, 177 Wash. 286, 31 P.2d 525; Duvall v. Pioneer Sand & Gravel Co., 191 Wash. 417, 71 P.2d 567; DeNune v. Tibbitts, 192 Wash. 279, 73 P.2d 521; Keisel v. Bredick, 192 Wash. 665, 74 P.2d 473; Lampe v. Tyrell, 200 Wash. 589, 94 P.2d 193.

Bean had had no instructions, they have failed to prove that the company was negligent in failing to supervise the operation, because we cannot assume that fact. The only thing shown was that no one was at the mill except Abe Bean. Under these circumstances, we do not believe it can reasonably be said, that negligence of the company was shown by the mere fact that another person was not at the mill to direct how the torch should be handled and used. This is especially true in view of the experience of Abe Bean with such a torch.

Finally, it is contended that O'Leary's statement to one of appellants was erroneously excluded from evidence. The exclusion, if erroneous, was not prejudicial. The joint enterprise here, was the dismantling and sale of the mill, not ownership of the mill, and the statement, while it might have been material with respect to "ownership", was not inconsistent with the idea of a joint enterprise of dismantling and sale of the mill, and in fact supported appellee's theory in that respect.

Affirmed.