336 P.2d 153

Louis B. WEST, Appellant,

v.

Gilbert SOTO and Joan Soto, husband and wife, Appellees.

No. 6341.

Supreme Court of Arizona.

March 4, 1959.

Darnell, Holesapple, McFall & Spaid, and Richard R. Fish, Tucson, for appellant.

Nasib Karam, and James D. Hathaway, Nogales, for appellees.

PHELPS, Chief Justice.

This is an appeal by Louis B. West, appellant, from an adverse judgment of the superior court of Santa Cruz county. The parties in the trial court were Gilbert Soto and Joan Soto, husband and wife, plaintiffs, and Joseph Duward Mayne, Harvey Richards and Louis B. West, defendants. At the conclusion of the trial a judgment was entered upon the verdict against Mayne, Richards and West. Thereafter this appeal was filed by West only and was duly perfected. The judgment in its full amount became final against Mayne and Richards.

From the evidence it appears that Mayne worked for the Service Life Insurance Company out of the Huachuca Vista office. There were two other representatives of the same company in the Huachuca area, but Mayne was the district supervisor. Defendant Richards is one of the representatives. Mayne's territory includes all of the State of Arizona but he concentrated on the Huachuca area and the farthest away from there that he had made a sale was in Tombstone. At the time of the accident Mayne was living at the Huachuca Vista Motel, which was also serving as his business office.

In the afternoon on the 5th day of August, 1955, Mr. West, the state manager for the above-mentioned insurance company, "was down from Phoenix." Mayne, Richards, and West discussed business for approximately three hours at the Huachuca Vista Motel. During the discussion they each consumed approximately four vodka and orange juice highballs. After the business, "was all taken care of," "Nogales was brought up" and West mentioned that he had never seen Nogales. Mayne said, "I'll take you over, and go over on a sightseeing tour." Since Mayne had volunteered the three defendants used Mayne's car, and Mayne was driving when they left Huachuca Vista for Nogales at approximately 3 or 4 p. m. En route, defendants consumed more intoxicating liquor at Sonoita or Patagonia.

Near the Nogales airport, the defendants were stopped by six servicemen from Fort Huachuca, who had noticed the erratic driving of the defendants' automobile while following them for a considerable distance in their own car. Three of these servicemen testified at the trial. Their testimony was to the effect that all of the defendants were very drunk. Bridges testified that Mayne had vomited on himself and looked very sleepy. He could hardly talk and it was difficult to understand anything he said. Richards tried to walk around the car and fell down. West remained in the car and shook his head (indicating no) when the servicemen offered to drive the car for them. One of

the servicemen testified that Richards was driving the car when they had signaled it to stop. He said Richards and Mayne changed position when they stopped the car at the time the servicemen tried to persuade defendants to let them drive their car into Nogales. The other two witnesses said that Mayne was driving. The servicemen got out of their car and offered to drive defendants' car to Nogales for them since they were in no condition to drive. Mayne, Richards and West all refused to let them drive. Zussman testified that all the defendants agreed that, "we can make it, we're o.k." West, sitting in the middle of the front seat was more or less wisecracking. He said, "we're o.k., we can make it."

Defendants' car, with Mayne driving, weaving from one side of the highway to the other, then proceeded toward Nogales. Approximately three miles from where defendants were stopped, Mayne negligently drove his car onto the wrong side of the road and collided with Joan Soto, plaintiff, as she was proceeding in the opposite direction in her car. The collision injured Joan Soto and damaged both cars.

Following the accident, Mayne was placed under arrest by a highway patrolman. He was taken by the patrolman to the sheriff's office in Nogales. Richards and West were allowed to accompany Mayne to the sheriff's office.

A justice of the peace came to the sheriff's office and read the citation to Mayne and asked for his plea as to operating a motor vehicle while under the influence of alcohol, Mayne plead, "guilty". Richards and West asked the judge if he could hold that plea until they talked to Mayne. West said, "Your Honor, we are in this together. I think we have a right to vote on it." The Judge gave them five minutes. The three defendants then had a conversation. West said, "we are in this together. If you want us to stick by you forget that guilty plea. You are drunk. We are not drunk. Let them prove it to us." Richards said to Mayne "what are you, out of your mind? They can't prove we are drunk if they give us a test we will refuse. We have that right." West said, "if you still insist on guilty you are on your own." Mayne then said he was going to plead "not guilty" but later when he was before the judge he again entered a plea of guilty. The other defendants had some additional conversation with Mayne at that time, but they gave up and the guilty plea was allowed to stand.

Based on the above facts the jury returned a verdict for the plaintiffs against Mayne, West and Richards and as stated before only West has appealed.

West in his first assignment of error contends that the trial court erred in denying his motion for a directed verdict in

his favor in that plaintiffs, as a matter of law, had wholly failed to show by any competent evidence that defendant West was either personally negligent or was chargeable with the negligence of Mr. Mayne, for the reason that the evidence construed most favorably to the plaintiffs, is insufficient as a matter of law, (a) to prove that defendant West was under any legal duty to plaintiffs, (b) to prove that defendant West breached any such duty, or (c) to show that any legal relationship existed between defendant Mayne and defendant West, whereby defendant West would become liable for the negligence of defendant Mayne, and more particularly, that plaintiffs have failed to prove that the defendants West and Mayne were parties to a joint venture.

This assignment of error raised two questions, (1) does the evidence show that West is liable to plaintiffs because of his own personal negligence and (2) does the evidence show West is liable to plaintiffs by reason of the fact that the defendants were engaged in a joint venture so that Mayne's negligence is imputed to West.

We will first discuss the question of whether West was personally guilty of any negligent act toward plaintiffs. The question of imputed negligence will be discussed later. Here we are concerned only with the question of whether defendant West was personally negligent.

There is no question that Mayne was negligent in driving the car. The evidence clearly shows West was drunk while riding in the car with Mayne and Richards who were also drunk. Does this make West guilty of negligence toward plaintiff? West by riding with a drunk driver was guilty of contributory negligence as between himself and the driver and therefore he would be barred from recovery as against the driver. Restatement Of The Law Of Torts, § 463. The mere fact however that West was drunk while riding in the car does not make him guilty of negligence toward the plaintiffs. Though West was careless of his own safety, he was not negligent towards plaintiffs because he owed them no duty.

Plaintiffs rely heavily upon the case of Franco v. Vakares, 35 Ariz. 309, 277 P. 812, 814. The case is not in point. In that case defendant Franco and a friend were riding around Tucson in the defendant's car. They came upon two mutual friends, one of whom was Salgado (plaintiffs' intestate). Defendant stopped, the friends got in. They had not proceeded far when Salgado produced a bottle of whiskey from which they all drank. All of them, apparently, became drunk but continued to drive aimlessly, singing et cetera, following first one suggestion and then another. In the course of this activity the defendant ran his car head-on into

a street car killing Salgado. His administrator, Vakares, brought suit against the driver, Franco, and the case was submitted to the jury which returned a verdict for the deceased's estate and against the defendant driver. The case had been submitted to the jury with an instruction on the issue of the deceased's contributory negligence.

The court said in part:

"We think the court should have granted defendant's motion for a directed verdict at the close of the case on the ground that the evidence conclusively and without conflict showed that the plaintiff's intestate was guilty of independent negligence. * * *"

The court denominated Salgado's act as independent negligence. Apparently the court meant that Salgado, by his own act was independently negligent, that is, he was personally negligent, not negligent by reason of the driver's negligence being imputed to him.

The case of Lynn v. Goodwin, 170 Cal. 112, 148 P. 927, L.R.A.1915E, 588, is cited in the Franco case and concerned a passenger that rode with a known intoxicated driver. The passenger, as plaintiff, sued the defendant driver of the other car which collided with the car in which plaintiff was riding. The court denied plaintiff recovery and in so doing said:

"While it is true that in general the negligence of the driver of a vehicle is not imputable to a passenger so as to bar that passenger's right of recovery (citing cases), yet the conduct of the plaintiff in riding and in continuing to ride in an automobile when he must have known that the driver was intoxicated established independent negligence upon the plaintiff's part, apart from the driver's negligence, barring the right of recovery (citing cases)."

In the Goodwin case the court in using the term independent negligence appeared to use it in the sense that plaintiff was himself guilty of contributory negligence in riding with an intoxicated driver to differentiate it from the negligence that might be imputed from the intoxicated driver to plaintiff which would also be contributory negligence.

Whether we denominate it "independent negligence" or "contributory negligence" as applied to the driver the result is the same. The guest cannot recover for injuries suffered under such circumstances as a result of the negligence of the drunk driver in whose car he is riding. We have no such question in the instant case. Here the plaintiff was not a passenger in Mayne's car. She was driving her own car in the lawful use of the highway when Mayne's car swerved across the center of the highway and crashed into her car inflicting serious injuries upon her person. As above stated the sole question presented here is whether West, who was a guest in Mayne's

car at the time of the accident, was also guilty of negligence under the circumstances so as to make him liable to plaintiff.

It is our view that the mere fact that West was riding with an intoxicated driver, without equal right of control with the driver in the operation of the car, was not guilty of actionable negligence toward plaintiff. This is true because as such guest he owed no duty to plaintiff. There must be a duty owed and a breach of that duty before one may be charged with the negligent violation of that duty. In stating this we must make it clear that there is no evidence that West procured Mayne's intoxication. So far as the evidence discloses they, in a spirit of unbridled conviviality, each voluntarily and freely imbibed a number of glasses of vodka and orange juice resulting in their condition above-described by the servicemen who testified in the case. There is no claim of liability on the part of West on the ground that the relation of principal and agent existed between him and Mayne except as it was incidental to their claim that defendants at the time were engaged in a joint venture which we will hereinafter consider.

Appellees next contend that West is guilty of negligence toward the plaintiffs in that West had an opportunity to substitute a sober driver and refused to do so by saying, "we're o.k. we can make it."

There is no proof that Mayne would have permitted the soldiers to drive his car if West had remained silent. From the evidence, there is nothing to suggest that West had any right whatever to control the operation of the car or any control over Mayne in determining who would occupy the driver's seat. All three defendants declined to accept the offer of the soldiers to drive them into Nogales by replying: "we're all right we can make it". We believe we can say as a matter of law, that West's conduct under the circumstances did not constitute actionable negligence on his part and his statement above was not an adequate substitute for an agreement to an equal right of control over the car.

Were defendants engaged in a joint venture at the time here involved? If they were this judgment must be affirmed, otherwise, it must be reversed. The elements of a joint venture are (1) a contract, (2) a common purpose, (3) a community of interest, and (4) an equal right of control. We have necessarily discussed some of these elements in considering the preceding question. Joint adventures are applicable to both business and social purposes. They are in the nature of a partnership. Each of the parties thereto is the agent of the others. It follows that each of the others is likewise a principal so that the act of one is the act of all.

A joint adventure whether it be for business or social purposes must rest

upon an agreement, either express or implied between the parties thereto. Whatever the common purpose or community of interest may be, it must appear as a part of the agreement either expressly or by necessary implication, that each of the parties to such joint adventure has authority to act for all in respect to the control of the means or agencies employed to execute such common purpose. Lampe v. Tyrell, 200 Wash. 589, 94 P.2d 193; Poutre v. Saunders, 19 Wash.2d 561, 143 P.2d 554. The above cases involved automobile accidents. In Edwards v. Washkuhn, 11 Wash. 2d 425, 119 P.2d 905, the court said in substance that, where the question of joint adventure is raised each one of these cases must be decided upon its own facts and unless the court can say as a matter of law that the parties were engaged in a joint adventure he must submit the question of fact to the jury.

█ In Wright v. Kinslow, Ky., 264 S. W.2d 673, 676, the court said:

"When all the occupants of an automobile are engaged in a 'joint adventure' or 'joint enterprise,' this Court has held that the negligence of one is the negligence of all, but in order to constitute a joint enterprise there must be an equal right, express or implied, among all occupants of the car, to direct and control its operation." Citing Dorris v. Stevens' Adm'r, 266 Ky. 602, 99 S.W.2d 755.

In the case of Stingley v. Crawford, 219 Iowa 509, 512, 513, 258 N.W. 316, 318, the court said:

"The fundamental doctrine controlling this question of joint adventure or common enterprise is not controlled by the fact that the parties are going to the same place on the same mission, but by whether or not the complaining party bore such relation to his associate as that he had the right of control in some manner over the means of locomotion." Teufel v. Kaufmann, 233 Iowa 443, 445, 6 N.W.2d 850, 851, 852, quotes the above with approval.

█ A careful examination of the authorities confirms the soundness of the principals above-expressed and we adopt them as the law of this state relating to joint adventures or joint enterprises. Applying them to the facts of this case compels the conclusion that the defendants Mayne, Richards and West, appellant herein, were not engaged in a joint adventure on their trip from Fort Huachuca to Nogales in the course of which plaintiff sustained her injuries. There can be no doubt from the evidence in this case that defendants had a common purpose, and perhaps a community of interest, in making the trip to Nogales on the day in question, but there is not a scintilla of evidence in the transcript from which an implication could arise that West had an equal right to control the manner in which the car was being operat-

ed. Such right of control could only have arisen out of an agreement express or implied. It was Mayne's car. It was therefore under his exclusive control in the absence of an agreement to the contrary. His negligence is therefore not imputable to West. Absent such agreement, however shocking this result may be to the layman, until the legislature imposes liability for injury to another, lawfully in the use of the highways, upon all the occupants of an automobile, who are shown to be *wholly incapable of operating said car by reason of intoxication,* the courts can give no redress.

Judgment reversed with directions to dismiss.

STRUCKMEYER, UDALL, JOHNSON and BERNSTEIN, JJ., concur.