527 P.2d 1100

**George D. ELLINGSON and La Vedna M. Ellingson, his wife, Appellants,**

v.

**Frank SLOAN, Appellee.**

**No. 1 CA–CIV 2101.**

Court of Appeals of Arizona, Division 1, Department B.

Nov. 7, 1974.

Rehearing Denied Jan. 9, 1975.

Review Denied Feb. 11, 1975.

Ward S. Johnson, Scottsdale, for appellants.

James J. Cox, Jr. and O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C., by John H. Killingsworth, Phoenix, for appellee.

## OPINION

EUBANK, Judge.

This appeal raises the question of whether an oral agreement to develop and sell real property is enforceable as a contract of joint venture or unenforceable as a brokerage contract which violates the Statute of Frauds.

George Ellingson, the appellant, and Lyle Trimble and their wives owned approximately 113 acres of land located on Mill Avenue in Tempe, Arizona. In 1965, this land was subject to a mortgage held by the First National Bank of Arizona. It could not be sold on the open market at that time for more than the amount of the mortgage. The owners, already in serious financial difficulties as a result of prior real estate transactions in which they had engaged, decided to make the property income-productive by developing it for apartments. This was necessary in order to realize any financial benefit from their property. During the next two years, they were unsuccessful in this regard and the mortgage went into default, placing the owners in further financial difficulties. In late 1967, negotiations were commenced with James Rae, a building contractor, to develop the property for apartments in a joint venture. Through Rae, Ellingson and Trimble met Frank Sloan, the appellee, who was helping Rae with mortgage financing. Although a real estate broker, Sloan's primary interest and experience was in property development. Specifically, he had an extensive background in obtaining mortgage financing from institutional lenders and a detailed knowledge of the methods, needs and requirements of such investors. When Rae proved unsuitable as a financial participant, Ellingson and Trimble, impressed with Sloan's demonstrated ability and special knowledge of insurance company investment requirements, asked him to join them as a joint venturer in developing the property. In exchange for Sloan's services it was agreed that he would receive a percentage of the owners' interest if a favorable joint venture arrangement could be made with a third party who had adequate financial resources. With this understanding, Sloan terminated his association with Rae and undertook management of the project. The agreement between Ellingson, Trimble and Sloan was never reduced to writing.

Under Sloan's direction, the project was revitalized. He changed architects, engaged a new building contractor, established that the site was suitable for a library, obtained on and off ramps to the freeway, and negotiated with the City of Tempe concerning the construction of cluster type apartments. Moreover, as manager of the joint venture, Sloan met weekly with the First National Bank over a period of eighteen months to report on the joint venture's activities and prevent foreclosure of the delinquent mortgage. As a result of his diligent search for an interested party with sufficient financial resources to join the project, Sloan made contact with the Cannon Development Company of California. By mid-1968, it appeared that a meaningful agreement would be reached

between Cannon, Trimble, Ellingson and Sloan for joint venture development of the property. Tentative agreements were prepared which fixed Sloan's interest in the enterprise. Shortly thereafter, however, Cannon withdrew its support. Although the California corporation was interested in the project, its financial structure would not permit it to engage in a joint venture as contemplated by the parties. At this point, under increased pressure from the mortgage holder, Trimble and Ellingson decided to sell the property rather than continue the develpment project. Sloan was reluctant to abandon their original plans, but finally agreed to locate a purchaser on the understanding that he would receive $150,000 from Trimble and Ellingson for his contribution to the joint venture. After re-opening negotiations with Cannon, Sloan conducted extensive discussions to arrange an outright sale of the property. In due course a sale was consummated for a purchase price of $1,500,000. Accordingly, Trimble executed a promissory note to Sloan for $75,000 as promised, but Ellingson refused to do so. This suit against the appellant followed. The trial court granted judgment for Sloan and against Ellingson, ruling, in effect, that an enforceable contract existed between the parties.

■ At the outset, we note that appellant has made a detailed attack upon certain Findings of Fact and Conclusions of Law purportedly made by the trial judge. Under Rule 52(a), Rules of Civil Procedure, 16 A.R.S., the trial judge is not required to make findings of fact unless specifically requested to do so. Although the trial judge initially made such findings, neither party had requested them; consequently, he ordered them stricken from the record as having been inadvertently entered. In this situation, there are no findings of fact and we must assume that the trial court made all the necessary findings essential to support the judgment. *See* Silva v. DeMund, 81 Ariz. 47, 299 P.2d 638 (1956); Bud Antle, Inc. v. Gregory, 7

Ariz.App. 291, 438 P.2d 438 (1968). Therefore, we need only determine if there is reasonable evidence in the record to support the conclusion that an enforceable contract existed between the parties.

■ A joint venture is formed when two or more parties agree to pursue a particular enterprise in the hope of sharing a profit. Arizona Public Service Co. v. Lamb, 84 Ariz. 314, 317, 327 P.2d 998, 1000 (1958). There are five specific elements which must be present in order to establish a joint venture: (1) a contract, (2) a common purpose, (3) a community of interest, (4) an equal right of control and (5) participation in both profits and losses. West v. Soto, 85 Ariz. 255, 336 P.2d 153 (1959); Estrella v. Suarez, 60 Ariz. 187, 134 P.2d 167 (1943). Appellant contends that the arrangement between the parties cannot be characterized as a joint venture because it did not provide for Sloan's participation in any losses nor for mutual control of the enterprise. We do not agree.

■ The term "losses" is not limited to monetary losses, but includes time expenditures and out-of-pocket expenses, especially where one party in a joint venture furnishes property and the other only services. In re Simpson, 222 F.Supp. 904 (D.C.N.C.1963); Kovacik v. Reed, 49 Cal.2d 166, 315 P.2d 314 (1957); Allison v. Dilsaver, 387 S.W.2d 206 (Mo.App.1965); 46 Am.Jur.2d Joint Ventures § 13 (1969). By agreeing to an exchange of services for a share of the profits to be derived from the joint venture, the parties provided for Sloan's participation in any losses. With respect to whether Sloan had an equal right of control over the venture, the record supports the conclusion that he did. Joint ownership of the property is not necessary to establish an equal right of control. *See* Ruby v. United Sugar Companies, S.A., 56 Ariz. 535, 109 P.2d 845 (1941); cf. West v. Soto, supra. The test is whether there is a right of mutual control over the subject matter of the venture, that is, the means by which the parties in-

tend to obtain their objective.[1] *See, e. g., West v. Soto, supra. See generally* 46 Am.Jur.2d Joint Ventures § 12 (1969). The record contains sufficient evidence that Sloan had an equal voice in the direction and control of the affairs of the parties. Indeed, he was the most active participant in managing both the direction and course of the joint venture. The fact that Sloan initially opposed the sale of the property does not establish the absence of an equal right of control. The sale was by mutual consent, as were all the other transactions undertaken by the parties. In our opinion, the facts adequately demonstrate the requisite joint control.

As noted above, there are five elements which must be present to establish a joint venture. Appellant does not challenge the existence of a "common purpose" nor a "community of interest" but in any case they are adequately established by the record. We, therefore, direct our discussion to a consideration of the contract necessary to support a joint venture.

 A contract of joint venture may be express or implied. West v. Soto, supra. In either case, it is founded upon a mutual understanding between the parties that they will associate themselves in a particular venture, and their intent to do so may be inferred from their conduct. Helfenbein v. Barae Investment Co., 19 Ariz.App. 436, 439, 508 P.2d 101, 104 (1973). While it is often said that a joint venture is merely a "partnership for a single transaction", *see, e. g.,* Estrella v. Suarez, 60 Ariz. 187, 196, 134 P.2d 167, 170 (1943) it is more accurate to say that it is "usually, but not necessarily, limited to a single transaction". Ruby v. United Sugar Companies, S.A., 56 Ariz. 535, 546, 209 P.2d 845, 850 (1941); see 46 Am.Jur.2d Joint Ventures § 10 (1969). Where there is a question as to the existence or nature of a joint venture, each case must be resolved upon its own facts. Mercer v. Vinson, 65 Ariz. 280, 286, 336 P.2d 854, 858 (1959).

 Applying these general principles to the facts of this case discloses the nature of the contract between the parties. Trimble and Ellingson interested Sloan in their plans for making the Mill Avenue property income-productive as an apartment site by promising him a share of the enterprise. They agreed to associate themselves in a development project. Sloan undertook a course of conduct extending over a lengthy period in which he devoted his time and services to the protection, preservation, promotion and development of the property. Subsequently, due to financial pressure and the possible loss of the property, the parties agreed to sell the property. Sloan negotiated the sale to the satisfaction of his coventurers. This was a different project than that originally planned, but a transaction consistent with the participants' objective of combining their efforts to make the property income-productive and sharing in the profits. The record reasonably supports the conclusion that the joint venture continued through the sale of the property. *Cf.* Waddel v. White, 56 Ariz. 420, 108 P.2d 565 (1940).

 Appellant argues that there was no consideration to support the joint venture arrangement whereby Sloan was to receive $150,000. We disagree. The consideration underlying a joint venture agreement may be represented by a contribution of money, services, or property. It makes no difference so long as the parties combine to conduct some particular enterprise, agreeing to share in the profits. Although the value of Sloan's contribution to the joint venture was not fixed until some time after the original agreement, his contribution was present consideration for his

---

1. "The requisite of equality in joint control does not render impossible the delegation of the duties of management to one of the participants in a joint venture. The rights of the parties wtih respect to the management and control of the enterprise may be fixed by agreement so as to effectively place control in the hands of one of the joint venturers, and, once having been fixed, may be changed by agreement.' (Footnotes omitted). 46 Am.Jur.2d, Joint Ventures, § 42 at 61 (1969).

conventurers' promise of a share in the project and the profits. In this respect, the oral agreement of the parties can be characterized as a contract of joint venture which encompassed both the development and ultimately the sale of the property.

■ In Eads v. Murphy, 27 Ariz. 267, 273, 232 P. 877, 879 (1925), our Supreme Court held:

> "While there is some conflict of authority, yet the overwhelming weight is to the effect that a parol partnership agreement or joint enterprise entered into by two or more persons, for the purpose of purchasing and selling real estate or interests therein for speculation, the profits to be divided among the parties, is not within the statute of frauds relating to the sale of lands or an interest therein, and that such an agreement may become effectual and suit maintained thereon, though not in writing."

The rule announced in Eads is applicable here and disposes of appellant's contention that the Statute of Frauds, A.R.S. § 44–101(6), is a bar to the enforcement of this contract. Nor, by the same token, is A.R.S. § 44–101(7), which concerns oral brokerage contracts, a bar.

In our opinion, there is reasonable evidence in the record from which to conclude that a contract of joint venture existed between the parties. Such a contract is not within our Statute of Frauds. Eads v. Murphy, supra.

The judgment is affirmed.

HAIRE, P. J., and JACOBSON, C. J., Division 1, concur.