611 P.2d 112

**MEAD, SAMUEL & CO., INC., a Washington Corporation, Appellant,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, a Maryland Corporation, Appellee.**

**No. 1 CA-CIV 4178.**

Court of Appeals of Arizona,
Division 1,
Department A.

March 25, 1980.

Rehearing Denied April 28, 1980.

Review Denied May 20, 1980.

Patrick J. McGroder, III, Clayton W. Plotkin, Phoenix, for appellant.

Moore, Jennings, Kepner, Scheffing & Hart by Curtis A. Jennings and Cathey D. Milam, Phoenix, for appellee.

OPINION

KEDDIE, Judge.

This is an appeal from summary judgment entered in favor of appellee United States Fidelity and Guaranty Company (defendant in the trial court and referred to herein as U.S.F.&G.) against appellant Mead, Samuel & Co., Inc. (plaintiff in the trial court and referred to herein as Mead, Samuel).

Mead, Samuel's predecessor in interest, Woodlakes, Inc., was the contractor for the construction of a 153 unit apartment complex in Tempe, Arizona, to be known as Woodlakes Apartments. On February 5, 1975, Woodlakes, Inc., executed a subcontract with Desert Sun Drywall, Inc. (Desert Sun), an Arizona corporation, in which the latter agreed to furnish all labor and materials to complete drywall work on the complex. On February 6, 1975, U.S.F.&G. issued a performance bond and a labor and material bond on the subcontract as surety for its principal, Desert Sun, in favor of Woodlakes, Inc.

Drywall was hung, taped and textured on the project but not to the satisfaction of Mead, Samuel. Mead, Samuel commenced this action on June 22, 1976, against Desert Sun, alleging it failed to perform in a workmanlike manner because "mud" on the drywall joints began flaking. Mead, Samuel also sought to recover its claimed damages from U.S.F.& G. as surety on the bonds.

U.S.F.& G. moved for summary judgment, contending the uncontradicted evidence is that the subcontract was not performed solely by its principal, that it was actually performed pursuant to a joint venture agreement of which U.S.F.&G. had no knowledge. U.S.F.&G. contends a surety is not liable for the acts of its principal performed jointly with another, and we agree.

In *Western Surety Company v. Horrall*, 111 Ariz. 486, 533 P.2d 543 (1975), our Supreme Court stated:

> . . . If a company agrees to be a surety for a particular principal, the contract is understood to be only for that named principal. Any material change in the obligation not assented to by the surety as one of the parties to the contract will discharge the surety from liability. This rule is applicable when there is a change of principals. In *Bianco v. Fireman's Fund Indemnity*, 72 Ariz. 181, 232 P.2d 386 (1951), it was said that the liability of a surety can only arise out of a bond contract made with the principal and it does not extend to activities of the principal in conjunction with others. If a surety undertakes responsibility for the performance of another, it does not then mean to undertake responsibility for the actions of the named principal performed jointly with a third person. . . . 111 Ariz. at 487, 533 P.2d at 544.

Mead, Samuel's statement of the questions presented for review is, in essence, that U.S.F.&G. could properly have prevailed below only if the record established these things unequivocally: (1) there was a joint venture agreement; (2) Desert Sun was a party to the joint venture agreement; (3) the joint venture agreement constituted a material change in the obligations of the surety; and (4) the surety had no knowledge of the joint venture agreement. More simply, however, this court must determine whether the uncontradicted evidence is that the subcontract was performed by someone other than Desert Sun alone without the consent of U.S.F.&G. If the answer is yes, the summary judgment must be affirmed, for that evidence would establish a material change in the surety's obligation, i. e., a change of principals not assented to by the surety. As held in *Western Surety Company v. Horrall, supra*, that record would require discharge of the surety from liability.

The joint venture agreement on which U.S.F.&G. based its motion is a document executed between one Sanford Clark and a Ron Hyce. It is typewritten on stationary bearing the printed letterhead "Desert Sun Drywall" and the printed name "Sandy", beneath which are printed "Sanford Clark" and "Owner". It is entitled "Joint Venture Agreement". The uncontradicted evidence is that Sanford Clark was the president of Desert Sun from its inception through the time in question, that he and his wife were its only two officers during that period, and that the corporation had three directors, namely, Clark, his wife and his mother.

Mead, Samuel has not called our attention to anything in the document to question its sufficiency as a joint venture agreement, and it clearly contains all of the essential elements of a joint venture as noted in *Ellingson v. Sloan*, 22 Ariz.App. 383, 527 P.2d 1100 (1974). Neither does Mead, Samuel raise any question that the agreement concerned the subcontract of Desert Sun with Mead, Samuel. Although Mead, Samuel contends there is a fact question concerning the knowledge of U.S.F.&G. of the agreement, there is no direct evidence of such knowledge in the record and nothing from which that inference could be drawn.

The agreement provides Clark or Hyce will be responsible for all on site supervision including the hiring and firing of employees and scheduling of all work. Clark agreed in it to provide labor, equipment and materials for all texture work at a specific rate. The agreement also provides that any direct labor performed by either party will be paid at the agreed upon rate on a weekly basis as job costs. It also provides that overhead costs will be divided equally between Clark and Hyce and that Desert Sun, "acting as broker" will be repaid for overhead. Under it each party is required to furnish his own truck and be responsible for all gas and related expenses; administrative functions are to be performed mutually as needed and neither is to be compensated for these services. The agreement specifically provides that Clark and Hyce will share equally any loss or any profit for each contract (the agreement provides it "may be extended to cover further joint ventures") as completed.

Mead, Samuel does contend there is evidence from which it could be found the subcontract was not performed under the joint venture agreement. More specifically, Mead, Samuel urges there is evidence from which it could be found that Hyce acted on the job only in the capacity of a foreman for Desert Sun and not as a party to the joint venture agreement. The only evidence in the record concerning Hyce's work on the project is the testimony of Clark given when questioned concerning Hyce in his deposition of November 30, 1976. It was developed in this order:

Q. Who is Ron Hyce?

A. He was my foreman.

\* \* \* \* \* \*

Q. Was he working for Mueller at the time that you were performing your contract at the apartment complex?

A. Well, he worked for me . .

\* \* \* \* \* \*

Q. Did you supervise all the work that was done at the apartment complex?

A. No.

Q. Who supervised the work?

A. Ron Hyce and Estes Thompson and myself.

\* \* \* \* \* \*

Q. Do you know the address, the current address, for Mr. Ron Hyce?

A. No.

Q. Do you know where he does reside?

A. He's still working for Mueller.

Q. Was he working for Mueller at the time that you were performing your contract at the apartment complex?

A. Well, he worked for me . .

\* \* \* \* \* \*

Q. When you were performing the work at the apartment complex, was Ron Hyce your employee?

A. Yes. I paid him.

\* \* \* \* \* \*

Q. How much supervision did you give to the work done by Mr. Hyce and Mr. Thompson?

A. Well, the job—they were running the job.

Q. They were the foremen, so to speak?

A. Yeah, so to speak.

\* \* \* \* \* \*

Q. When did he [Hyce] go off your payroll? At the time he left?

A. Well, he was never, as such, on payroll, like so much per week. We just—we would draw our expenses. And then we were going to split the profit of the job, is the way it was.

Q. You and Hyce were?

A. Yes.

\* \* \* \* \* \*

Q. . . . You say the arrangement between you and Mr. Hyce was that you would draw your expenses. This included paying for labor and material?

A. No. Just the truck expenses, gas.

Q. Who paid Highland Stucco?

A. Desert Sun.

Q. And you had other employees, laborers, on the job?

A. Yes.

Q. And who paid them?

A. Desert Sun.

Q. What about Estes Thompson? He was an employee of Desert Sun?

A. Yes.

Q. But Ron Hyce was to be compensated by a splitting of the profits after all of the expenses?

A. Who, now?

Q. Mr. Hyce?

A. Yes.

Q. Who was he to split the profits with?

A. Me. Desert Sun.

Q. Was this agreement with Mr. Hyce ever reduced to writing of any kind?

A. I thought you had a copy of it.

MR. PALUMBO: Me?

THE WITNESS: No.

Q. BY MR. JENNINGS: It apparently, then, has been reduced to writing?

A. Yes.

The record is clear that the "agreement" under discussion was the joint venture agreement.

Despite Clark's statement that Hyce was his employee and that he paid him, it is clear from the quoted testimony that at least a portion if not all Hyce's work on the project was performed under the joint venture agreement. There is no evidence from which any inference to the contrary could be drawn. Whether Desert Sun was a party to the joint venture is immaterial; if it was, it jointly performed with another, and if it was not, the subcontract was performed by another, i. e., the joint venture of Clark and Hyce. In either case someone other than the principal of the surety acted as a principal on the subcontract, and the surety, therefore, cannot be liable to the obligee.

The parties have treated the question of notice to Mead, Samuel of the existence of the joint venture. Apparently it was raised by U.S.F.&G. because that point was considered in *Spokane Union Stockyards Co. v. Maryland Casualty Co.*, 178 P. 3, 105 Wash. 366 (1919), cited in part by U.S.F.&G. for the proposition enunciated in *Western Surety Company v. Horrall, supra.* Certainly there is evidence in this case (checks issued by Mead, Samuel payable jointly to Desert Sun and Hyce) from which it could be concluded that Mead, Samuel was aware the subcontract was being performed by the joint venture. However, whether Mead, Samuel had such notice is immaterial. *See Spokane Union Stockyards Co. v. Maryland Casulaty Co., supra*, 178 P. at 5.

Affirmed.

FROEB, P. J., Department A, and WREN, J., concur.

NOTE: The Honorable DOUGLAS W. KEDDIE, Yuma County Superior Court Judge, was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to A.R.S., Const., art. VI, § 3.