653 A.2d 579

ROBERT H. KESSLER, PLAINTIFF–RESPONDENT, v. RICHARD ANTINORA, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 11, 1995—Decided February 14, 1995.

Before Judges KING, MUIR, Jr. and EICHEN.

*Carl E. Klotz* argued the cause for appellant (*Klotz & McCann,* attorneys; *Mr. Klotz,* on the brief).

*Peter M. Bray* argued the cause for respondent (*Bray, Chiocca, Rappaport & Rothstadt,* attorneys; *Mr. Bray,* on the brief).

The opinion of the court was delivered by

KING, P.J.A.D.

**I**

Plaintiff Robert H. Kessler and defendant Richard Antinora entered into a written agreement for the purpose of building and selling a single-family residence on a lot in Wayne in Passaic County. The concept of the agreement seemed simple: Kessler was to provide the money and Antinora was to act as general contractor. Profits would be divided—60% to Kessler, 40% to Antinora—after Kessler was repaid. No thought was given to losses. The venture lost money. Kessler sued Antinora to recover 40% of his financial losses or $65,742. The Law Division judge ruled in Kessler's favor on summary judgment. The judge denied Antinora's cross-motion for summary judgment of dismissal. We disagree, reverse the judgment in Kessler's favor, and order judgment in Antinora's favor.

**II**

On April 15, 1987 Kessler and Antinora executed a seven-page written agreement titled "JOINT VENTURE PARTNERSHIP AGREEMENT." The agreement contemplated a single venture: buying a lot in Wayne and building and selling a residence on it. Under the agreement Kessler agreed to "provide all necessary funds to purchase land and construct a one-family dwelling and disburse all funds to pay bills." Antinora agreed to "actually construct the dwelling and be the general contractor of the job."

The agreement provided for distribution of the proceeds of the venture:

9. *Distribution.* Upon or about completion of the dwelling it shall be placed for sale. Upon sale of same, and after deducting all monies expended by Robert Kessler plus insterest [sic] at prime plus one point and/or including interest or any funds borrowed for the project, not to exceed prime plus one point, engineering fees, architectural fees, legal fees, broker fees, if any, and any other costs connected with the project, the parties, Robert Kessler and Richard Antinora, shall divide the net profits as follows: ...

Robert Kessler—sixty (60%) percent

Richard Antinora—forty (40%) percent

The agreement was silent about losses. There was no provision to compensate Antinora for any services other than the 40% profit clause.

Both parties complied with the agreement. Kessler provided the funds; Antinora supervised and delivered the finished house. This took over three years. Meanwhile, the real estate market soured. The house sold on September 1, 1991 for $420,000. The cost incurred in building and selling the house was $498,917.

Kessler was repaid all but $78,917 of the money he advanced pursuant to the contract. He also claimed unreimbursed interest of $85,440 for his self-characterized "loan" to the partnership. This claim for interest is disputed as to amount. Kessler thus claimed a total loss of $164,357. He sought and obtained his summary judgment in the Law Division for 40% of this amount, or $65,742.80. No amount was presented on the value of Antinora's services over the three-year period as general contractor.

Antinora contended that the agreement was basically for a joint venture, silent as to losses, and that both parties risked and lost their unrecovered contributions—Kessler's money and Antinora's labor. The Law Division judge disagreed and found that statutory partnership law governed. The judge ruled that *N.J.S.A.* 42:1–18a required each partner to "contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits." *N.J.S.A.* 42:1–18a. The judge ruled that Antinora was liable for 40% of Kessler's monetary losses and inferentially rejected any recognition of Antinora's "in kind" loss.

## III

We conclude that New Jersey's allegedly applicable section of the Uniform Partnership Law, *N.J.S.A.* 42:1–18a, does not control here because of the specific terms of the agreement between the parties. The pertinent statutory section states:

42:1–18. Rights and duties of partners

The rights and duties of the partners in relation to the partnership shall be determined, *subject to any agreement between them,* by the following rules:

a. Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits.

 \*  \*  \*  \*  \*  \*  \*  \*

[*N.J.S.A.* 42:1–18a.] (emphasis added)

We find the agreement controlling over the statute. The agreement said that upon sale of the house "and after deducting all monies expended by Robert Kessler plus interest," fees, and other costs the "parties [Kessler and Antinora] shall divide net profits" 60% and 40%. We conclude that the agreement evinced a clear intent that Kessler would be repaid his investment from the sale of the house only, not by Antinora. There is no suggestion in the agreement that any of Kessler's risked and lost money would be repaid in part by Antinora. Nor is there any suggestion that Antinora's risked labor would be repaid in part by Kessler.

We find particularly persuasive the reasoning of the California Supreme Court in *Kovacik v. Reed,* 49 *Cal.*2d 166, 315 *P.*2d 314 (1957). There the parties orally agreed to participate in a kitchen remodeling venture for Sears Roebuck & Company. Kovacik agreed to invest $10,000 in the venture and Reed agreed to become the job estimator and supervisor. They agreed to share the profits on a 50–50 basis. Possible losses were not discussed. Despite their efforts, the venture was unsuccessful and Kovacik sued Reed to recover one-half the money losses he endured. Kovacik prevailed in the trial court and recovered $4,340, or one-half the net monetary loss of $8,680.

The California Supreme Court acknowledged the general rule of partnership law that in the absence of an agreement, "the law presumes that partners and joint adventurers intended to participate equally in the profits and losses of the common enterprise, irrespective of any inequality in the amounts each contributed to the capital employed in the venture, with the losses being shared by them in the same proportions as they share the profits." *Id.,* 315 *P.*2d at 315–16, citing *Cal.Corp.Code* § 15018, which is identical to *N.J.S.A.* 40:1–18.

The California court then observed that this "general rule" did not obtain where one party contributed the money and the other the labor, stating:

However, it appears that in the cases in which the above stated general rule has been applied, each of the parties had contributed capital consisting of either money or land or other tangible property, or else was to receive compensation for services rendered to the common undertaking which was to be paid before computation of the profits or losses. Where, however, as in the present case, one partner or joint adventurer contributes the money capital as against the other's skill and labor, all the cases cited, and which our research has discovered, hold that neither party is liable to the other for contribution for any loss sustained. Thus, upon loss of the money the party who contributed it is not entitled to recover any part of it from the party who contributed only services.

[*Id.* at 316.]

The rationale which the California decision and the earlier cited cases adopted was where one party contributes money and the other services, in the event of a loss, each loses his own capital— one in the form of money, the other in labor. *Ibid.* A corollary view was that the parties have implicitly agreed, by their conduct and contract, to share profits and that their contributions of money and sweat equity have been valued in an equal ratio. Thus, upon the loss of both some money and labor, the loss falls upon each proportionately without any legal recourse. Thus, Kovacik lost $8,680 of his $10,000 while Reed lost all of his labor.

Likewise, in the case before us, Kessler lost some of his money—$65,472, plus disputed interest, but Antinora lost all of the value of his labor on the three-year project. The Arizona Court of Appeals in *Ellingson v. Sloan,* 22 *Ariz.App.* 383, 527 *P.*2d 1100 (1974), has also recognized that in a joint venture "[t]he term

'losses' is not limited to monetary losses, but includes time expenditures and out-of-pocket expenses, especially where one party in a joint venture furnishes property and the other only services." *Id.*, 527 *P.*2d at 1103, citing *Kovacik v. Reed, supra.* The point of the Arizona case is that rendering services to an ultimately losing venture represents a valuable contribution, even though the laboring venturer risked no money capital.

Another variation of the capital and services joint venture is found in *Snellbaker v. Herrmann,* 315 *Pa.Super.* 520, 462 *A.*2d 713 (1983). Plaintiff Snellbaker and defendant Herrmann entered into a joint venture to import and sell German automobiles. Snellbaker agreed to put up the money to obtain the vehicles; Herrmann was to service and sell them upon arrival in the United States. From the proceeds, plaintiff would be reimbursed the funds which he advanced, expenses would be paid, and the balance or profit divided equally. Citing *Kovacik v. Reed, supra,* the Pennsylvania appellate court concluded that absent some specific agreement to the contrary Snellbaker could not recover any part of his lost investment from Herrmann, stating: "However, where one of the co-venturers is responsible to provide funds only and the other agrees to supply knowledge, experience or services, the one who provides the capital cannot, if it is lost, obtain contribution from his associate." *Id.,* 462 *A.*2d at 717.

We conclude that the "JOINT VENTURE PARTNERSHIP AGREEMENT" here did contemplate repayment to Kessler of his investment but only from the proceeds of the sale of the house, not from his coventurer Antinora. This is what the parties said, the only truly reliable evidence of what they intended. Our interpretation of the agreement between the parties accords with the result reached under the common-law cases discussed, and with our overall sense of fairness. Each party shoulders a loss, one in determinative dollars; the other in labor, difficult, if not impossible, to quantify. The parties did not think about losses in casting their agreement and any attempt by the law now to reconstruct their then non-existent intent on the subject would be speculative.

Reversed for entry of summary judgment for the defendant Antinora.