930 P.2d 1309

**The ESTATE OF Ruben A. HERNANDEZ, by Elizabeth L. HERNANDEZ–WHEELER, as his Personal Representative, Elizabeth A. Hernandez–Wheeler, as Personal Representative of Ruben A. Hernandez, for and on behalf of his surviving children, Ruben R. Hernandez, Elizabeth A. Hernandez–Wheeler and Catherine Rose Poli, and Ruben R. Hernandez, Elizabeth L. Hernandez–Wheeler, and Catherine Rose Poli, in their individual capacity, Plaintiffs/Appellants,**

v.

**Christopher FLAVIO, Glen Michael, John Manross, Paul Reynolds, Erick Roberts, Thomas Schwarze, Douglas Sims, Scott Urban and Larry Wagner, Defendants/Appellees.**

No. CV–95–0452–PR.

Supreme Court of Arizona,
En Banc.

Jan. 23, 1997.

Risner & Graham by William J. Risner, Kenneth K. Graham, Tucson, for Plaintiffs/Appellants.

Potts & Peterson by Richard G. Potts, Roger Peterson, Phoenix, for Christopher Flavio and Larry Wagner.

O'Dowd Burke & Lundquist by Robert E. Lundquist, Tucson, for Glen Michael, Paul Reynolds, Douglas Sims and Scott Urban.

O'Connor, Cavanagh, Molloy & Jones by Peter Akmajian, James D. Campbell, Tucson, for Thomas Schwarze.

## OPINION

MOELLER, Justice.

### FACTS AND PROCEDURAL HISTORY

Delta Tau Delta is a fraternity with a chapter at the University of Arizona, where it hosts social functions throughout the school year. At the time this case arose, members of the fraternity contributed money each semester to a social fund, which was used to purchase alcohol for that semester's social events. The social chairman, a member over 21 years of age, used the money in the social fund to buy the alcohol for each event. If a member chose not to imbibe, his social dues were reduced. The fraternity's policy was to allow all contributing members to drink alcohol, regardless of age.

On August 27, 1988, Delta Tau Delta hosted a party welcoming prospective members and congratulating them on their decision to "pledge"[1] the fraternity. These pledges,

---

1. "Pledging" a fraternity means that the prospective member promises to enter into a semester-

only hours before the party, accepted the fraternity's offer to enter into the pledge education program. At the party, alcohol was provided to the attendees, which consisted of approximately 80 members, 18 pledges, and probably more than 300 female guests.

Because he contributed to the social fund, fraternity member John Rayner was permitted to drink the alcohol provided, notwithstanding the fact that he was a minor. Rayner consumed, in his estimate, "no more than 10" beers that evening. After leaving the party, Rayner's car collided with another vehicle driven by the decedent, Ruben Hernandez. Hernandez eventually died from his injuries in July 1990.

Before his death, Hernandez filed a personal injury action against Rayner and later added the pledges, among others, to his complaint. After Hernandez died, his personal representative was substituted as plaintiff and a claim for wrongful death was added. The trial judge granted summary judgment to the defendants, holding that a non-licensee could not be held civilly liable to a third party for injuries caused by the non-licensee furnishing alcohol to a minor. The court of appeals affirmed the summary judgment. *Estate of Hernandez v. Board of Regents,* 172 Ariz. 522, 838 P.2d 1283 (App.1991), *vacated,* 177 Ariz. 244, 866 P.2d 1330 (1994). However, this court, on review, held that "Arizona courts ... will entertain an action for damages against a non-licensee who negligently furnishes alcohol to those under the legal drinking age when that act is a cause of injury to a third person." *Estate of Hernandez v. Board of Regents,* 177 Ariz. 244, 256, 866 P.2d 1330, 1342 (1994). As a result, we vacated the court of appeals' opinion, reversed the trial court's judgment, and remanded for further proceedings. *Id.*

On remand, defendants again moved for summary judgment. In granting the pledges' motion, the trial judge noted that the record showed that the pledges were not members of the fraternity, and that, before August 27, 1988, the pledges had not contributed any alcohol or funds to purchase the

alcohol served at the party. On plaintiffs' motion to reconsider, the trial court further found that the pledges had no voting power or any say in the planning of the party, that the social dues paid by the pledges after the party had prospective application only, and that the pledges were not involved in any scheme to furnish alcohol to minors at the August 27, 1988 party.

The court of appeals reversed the summary judgment for the pledges, stating that a jury could find that the pledges knew they were obligated to pay a social fee that would be used to furnish alcohol to minors, and thus, the pledges were "knowing participants in an illegal venture." *In re Hernandez v. Flavio,* 186 Ariz. 517, 520, 924 P.2d 1036, 1039 (App.1995). Judge Fernandez dissented, believing there was insufficient evidence to support the majority's conclusion that there was a fact issue "as to whether the pledges participated in furnishing alcohol to Rayner [the driver] before the accident in this case." *Id.* at 521, 924 P.2d at 1040 (Fernandez, J., concurring in part and dissenting in part). Although other parties to this litigation petitioned us to review the court of appeals' opinion, we granted only the pledges' petition. We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3), and Ariz.Rev.Stat.Ann. (A.R.S.) § 12–120.24.

## ISSUE

Are there genuine issues of material fact that would support a jury's finding of liability against the pledges on the theory that the pledges were involved in furnishing alcohol to minors?

## DISCUSSION

### I. Standard of Review

██ When considering a motion for summary judgment, the trial judge applies the same standards that would be used in a directed verdict situation. *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). In doing so, the trial judge

---

long pledge education program with the intent to join the fraternity's membership at the program's end. During the program, the fraternity evaluates the pledge and the pledge, conversely, evaluates the fraternity.

should grant motions for summary judgment if the facts supporting the claim or defense "have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Id.* In reviewing a summary judgment, we review the facts de novo and in the light most favorable to the non-movant. *Id.*

## II. Analysis

Plaintiffs have set forth two similar and related theories for holding the pledges responsible for Hernandez' injuries and death. Although plaintiffs treat the two theories as coextensive, we have segregated them to better analyze the relevant aspects of each theory. First, plaintiffs contend that the pledges are liable because they were members of a joint venture to provide alcohol to all those who, regardless of age, contributed to the alcohol fund. Second, plaintiffs contend that the pledges are liable because they were involved in a conspiracy within the meaning of Restatement (Second) of Torts § 876, the conspiracy being one to provide alcohol to minors. For the reasons stated below, we hold that the totality of plaintiffs' evidence has *de minimis* probative value and that no reasonable jury could impose liability against the pledges.

### A. Were the pledges members of a joint venture to provide alcohol to minors?

■ Traditionally, a joint venture involved commercial or business pursuits. This court has described a joint venture as a "special combination of two or more persons where in some special venture a profit is jointly sought." *Arizona Public Service Co. v. Lamb,* 84 Ariz. 314, 317, 327 P.2d 998, 1000 (1958); *Ruby v. United Sugar Cos., S.A.,* 56 Ariz. 535, 546, 109 P.2d 845, 850 (1941). The elements of a business joint venture generally include: (1) an agreement, (2) a common purpose, (3) a community of interest, (4) an equal right of control, and (5) participation in profits and losses. *Tanner Companies v. Superior Court,* 144 Ariz. 141, 143, 696 P.2d 693, 695 (1985).

■ However, the joint venture theory is not limited to business joint ventures; it applies equally to social circumstances. *West v. Soto,* 85 Ariz. 255, 261, 336 P.2d 153, 157 (1959). This court has obviated the "participation in profits and losses" requirement for such social joint ventures. *See id.*

In some states, courts have distinguished between joint ventures and joint enterprises, holding that a joint enterprise is sometimes defined as a "non-commercial joint venture" or a social venture. *Clawson v. General Insurance Company of America,* 90 Idaho 424, 429, 412 P.2d 597, 602 (1966) (holding that parties joined were a joint enterprise rather than a joint venture because the primary purpose was not to gain a profit); *Bradbury v. Nagelhus,* 132 Mont. 417, 319 P.2d 503, 509 (1957) ("If the venture be for pleasure rather than profit, it is sometimes called a joint enterprise."); 46 Am.Jur.2d *Joint Ventures* § 6, at 27 (1994).

■ In Arizona, however, the courts have not made such a distinction, apparently using "joint venture" and "joint enterprise" interchangeably to identify either commercial or social partnerships. *See Sparks v. Republic Nat. Life Ins. Co.,* 132 Ariz. 529, 540, 647 P.2d 1127, 1138, *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982); *West,* 85 Ariz. at 262, 336 P.2d at 157–58; *L.M. White Contracting Co. v. Tucson Rock & Sand Co.,* 11 Ariz.App. 540, 545, 466 P.2d 413, 418 (1970). In any event, Arizona courts have explicitly found that a joint venture or enterprise involving a social venture must contain an equal right of control by all parties. *West,* 85 Ariz. at 262–63, 336 P.2d at 157–58. Either expressly or impliedly, the agreement must indicate that "each of the parties to such joint adventure has authority to act for all in respect to the control of the means or agencies employed to execute such common purpose." *West,* 85 Ariz. at 262, 336 P.2d at 157. Each party to the joint venture must have an "equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control or management." *Maloy v. Taylor,* 86 Ariz. 356, 359, 346 P.2d 1086, 1088 (1959) (citations omitted).

■ While the "equal right to control" element of a joint venture could imply that each venturer must have an equivalent amount of control over the venture's operation, we believe it is more accurate to say that each joint venturer must share, to some extent, in the control of the venture. In other words, it is sufficient that a venturer has some voice or right to be heard in the control and management of the venture.

■ The element of control is glaringly absent from the present case. The pledges had *no* control over the furnishing of alcohol on the night of the party. They did not contribute any money to the social fund; they did not purchase any alcohol; they did not serve any alcohol; they had no say in the planning of the party or who would attend; and they had no voting power in determining whether alcohol would be provided to minors.

Plaintiffs argue that the fraternity members relinquished all control to the social committee or social chairman over the furnishing of alcohol and, therefore, the pledges and members shared equally in the lack of control. We reject this argument because, unlike the pledges, the fraternity members had control over the management of the fraternity. Each member had the opportunity and the power to vote for the president and two vice presidents, who appointed the social chairman; each fraternity member could have voted to disapprove any of the social chairman's proposed activities that involved furnishing alcohol to minors; and each member could have run for an officer position or applied for a committee chairmanship.[2]

Plaintiffs argue that the fraternity and its members purposely relinquished control over the planning and purchasing of alcohol to a single member in an attempt to shield the fraternity from liability. However, the issue is not whether the members exercised their voting power, but whether the members had the power (exercised or not) to affect the alcohol policies of the fraternity. As the preceding paragraph indicates, the members had many options by which to affect these policies; the pledges, however, were unable to exercise any of these options. Thus, the pledges had no control over the furnishing of alcohol.

Although plaintiffs have argued that the pledges were "members" of the fraternity, they also concede that the alleged liability of the pledges is not predicated on "membership" in the fraternity, but on "membership" in a joint venture to provide alcohol to minors. Although some of the evidence plaintiffs offered may have indirectly equated pledges with "members," the relevant aspects of membership, that is, voting power and control, were denied to the pledges. Because the pledges had no control over the fraternity's actions, they cannot be held liable, regardless of whether they were denoted "members" of the fraternity.

Because no reasonable jury could find that the pledges had control over the decision to furnish alcohol to minors, there was, as a matter of law, no joint venture. *Mercer v. Vinson*, 85 Ariz. 280, 286, 336 P.2d 854, 858 (1959).

**B. Were the pledges involved in a conspiracy, within the meaning of Restatement (Second) of Torts § 876, to provide alcohol to minors?**

■ In Arizona, there is no civil action for conspiracy. However, there is an action for damages caused by acts committed pursuant to a conspiracy. *Consolidated Tungsten Mines, Inc. v. Frazier*, 87 Ariz. 128, 138, 348 P.2d 734, 741 (1960); *Hale v. Brown*, 84 Ariz. 61, 70, 323 P.2d 955, 961 (1958). Plaintiffs concede that there is no civil conspiracy action, but claim that the pledges are responsible for their tortious acts, specifically, for joining the criminal scheme, drinking the alcohol, and ultimately paying in to the social fund after the fact. Plaintiffs rely on Re-

---

**2.** Lack of control is the reason why "holdover pledges" (pledges who could not make the grade requirement in their first semester of pledging and were held over for a second semester) also cannot be held liable. Although Glen Michael, a holdover pledge, may have paid into the social fund during the previous semester, as a pledge, he had no power to control. Furthermore, because the social fund was completely depleted at the end of the previous semester, none of the money Glen Michael may have previously paid into the fund could possibly have been used to purchase alcohol for the August 27 party.

statement (Second) of Torts § 876(a), which provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) **does a tortious act** in concert with the other or pursuant to a common design with him.

Restatement (Second) of Torts § 876(a) (1979) (emphasis added).

Comments to § 876(a) are as follows:

a. Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words and may be implied and understood to exist from the conduct itself. Whenever two or more persons commit **tortious acts** in concert, each becomes subject to liability for the acts of the others, as well as for his own acts. The theory of the early common law was that there was a mutual agency of each to act for the others, which made all liable for the tortious acts of any one.

b. The same rule is applicable, in general, to **tortious acts** done pursuant to a common design or plan for cooperation in a tortious line of conduct or to accomplish a tortious end. It is in connection with these common designs or plans that the word "conspiracy" is often used. The mere common plan, design or even express agreement is not enough for liability in itself, and **there must be acts of a tortious character** in carrying it into execution.

Restatement (Second) of Torts § 876(a), cmt. (1979) (emphasis added).

 To be found liable under section 876(a), one must have committed some tortious act.[3] *See* § 876(a). The Colorado Supreme Court, in defining "tortious act" as it relates to Colorado's civil conspiracy statute, concluded that " 'tortious act' ... includes any conduct other than breach of contract that constitutes a civil wrong and causes injury or damages." *Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049, 1055 (Colo.

1995). Plaintiffs argue that the pledges committed tortious acts, specifically, drinking alcohol and paying into the social fund. Standing alone, these acts are not civil wrongs. But even if they were, causation is nevertheless absent in plaintiffs' conspiracy theory; the pledges are blameless because their actions did not cause Hernandez' injuries or damages, and thus, their actions were not tortious.

The mere act of drinking alcohol as a minor is not tortious absent some causal connection between the drinking and the injury. Furthermore, "[a]n act ... is not regarded as a cause of an event if the particular event would have occurred without it." W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 41, at 265 (5th ed. 1984). John Rayner did not become intoxicated because minor pledges drank alcohol at the party. The pledges' act of drinking alcohol was not the "but for" or even "a substantial factor" causing Rayner's intoxication and subsequent accident. In this respect, the pledges are in the same category as the approximately 300 minor female guests who drank alcohol at the party. To find that, by merely drinking alcohol, the pledges caused defendant's injury would stretch the scope of causation too far.

None of the pledges paid into the social fund prior to the commencement of the party. The alcohol that was purchased for the August 27, 1988 party was funded solely from the social dues paid by the fraternity members. Plaintiffs insist that the pledges essentially bought the alcohol on credit, by virtue of their implicit acquiescence in the scheme and eventual payment into the social fund. The evidence, however, does not support this assertion.

No evidence exists that the pledges knew that they would have to pay for the alcohol served at the August 27, 1988 party. Plaintiffs proffer evidence of the general fraternity policy of informing pledges of their financial obligations and the university's policy against underage drinking. Yet, plaintiffs adduce little evidence that the pledges knew

---

**3.** Merely engaging in a joint enterprise or joint venture may be sufficient to find vicarious liability for concerted action. *Sparks,* 132 Ariz. at 540,

647 P.2d at 1138. However, as previously explained, there was no joint venture and thus, no liability for concerted action.

**512**

prior to the party that they would have to pay future social dues. Most importantly, plaintiffs set forth absolutely no evidence that the pledges knew they were obligated to pay for the alcohol served at the August 27, 1988 party. The purpose of the party was to celebrate the pledges' decision to enter the pledge education program. The pledges were guests of honor and did not expect to contribute to the social fund for this party. No evidence indicates otherwise.

Furthermore, the inherent definition of causation requires that the allegedly tortious act occur *before* the injury or damages. Prosser defines cause as "a necessary antecedent ... in a very real and practical sense, the term 'cause in fact' embraces all things which have *so far* contributed to the result that without them it would not have occurred." Keeton, *supra,* at 265 (emphasis added). By paying into the social fund *after* the accident, the pledges' contributions could not have been the cause of the accident.

To be clear, however, this opinion should *not* be read as holding that *no* situation exists where payment after the fact would preclude a finding of causation. If a person or entity contracted to pay at a later date into a fund from which alcohol was purchased, thus essentially paying on credit, that person's acts could arguably be held to be a cause of the injury. Here, however, there is no evidence that the pledges knew that, by drinking alcohol at the August 27 party, they had agreed to pay for the alcohol and for alcohol for others at a later date. Thus, the pledges cannot be held liable for their after-the-injury contributions to the fund.

### DISPOSITION

The evidence plaintiffs proffered has insufficient probative value to warrant a finding by a reasonable jury that the pledges are responsible for Hernandez' injuries and death on the theories advanced. We agree with the trial court and the dissenting court of appeals judge who concluded that summary judgment for the pledges was appropriate. The summary judgment entered by the trial court in favor of the pledges is affirmed.

That portion of the court of appeals' opinion dealing with the pledges is vacated.

ZLAKET, C.J., JONES, Vice C.J., and FELDMAN and MARTONE, JJ., concur.